350 So.2d 158 (1977)
PARISH OF JEFFERSON
v.
BAYOU LANDING LIMITED, INC., d/b/a Airline Highway Adult Books and Movies, et al.
No. 59337.
Supreme Court of Louisiana.
September 19, 1977.
Dissenting Opinion October 11, 1977.
*159 Michael Silvers, Silvers & Tanet, New Orleans, Glenn Zell, Atlanta, Ga., for defendants-appellants.
*160 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry Lee, Parish Atty., Robert H. Fray, Asst. Parish Atty., for plaintiff-appellee.
DIXON, Justice.
On June 4, 1976 the Parish of Jefferson filed suit to enjoin the defendant, Bayou Landing Limited, Inc., from "the sale, distribution, exhibition and/or display of obscene materials." Following trial, the district court rendered judgment permanently enjoining and restraining defendant from "selling, distributing, exhibiting and/or displaying obscene materials in and upon the premises located at 3936 Airline Highway, Parish of Jefferson, State of Louisiana." The defendant appealed suspensively from that judgment and the Fourth Circuit Court of Appeal amended and affirmed the judgment of the district court. Parish of Jefferson v. Bayou Landing Limited, Inc., 341 So.2d 23 (La.App. 4th Cir. 1976).[1] On March 9, 1977 this court granted writs to review the judgment of the Court of Appeal. 342 So.2d 868.
The facts surrounding the institution of this suit follow. The Vice Squad of the Jefferson Parish Sheriff's Office were conducting an investigation into possible criminal violations concerning the sale of obscene materials at the premises occupied by Bayou Landing Limited, Inc., d/b/a Airline Highway Adult Books and Movies. On May 28, 1975 a detective of the Jefferson Parish Sheriff's Office seized a quantity of books that he believed to be obscene. On May 29, 1975 another detective of the Jefferson Parish Sheriff's Office seized a quantity of books, also believing that they were obscene. Neither detective had obtained a warrant for the seizure, but rather made the determination that these materials were obscene by reading and applying the applicable Jefferson Parish obscenity ordinance. Neither detective paid for the books. Approximately five cartons of materials were thus seized without benefit of a warrant.
On June 2, 1975 two other detectives of the Jefferson Parish Sheriff's Office entered the defendant book store. Each officer viewed one movie, available to customers for showing in small movie viewing machines in the book store. After viewing the movies, the officers purchased three books with marked currency. On the basis of their observations the officers applied for a search warrant. In their affidavit the officers related that the books and movies depicted such acts as oral copulation, anal sex, masturbation, sadism, masochism, lesbian activity and cunnilingus. A search warrant was issued for the search of the book store, authorizing the seizure of "pornographic material to wit: Magazines, movies, projectors, recorded U. S. currency, obscene items displayed (dildos, stimulated (sic) items) . . ." The officers then executed *161 the warrant and seized some two hundred books and magazines, seventeen 8 mm movies, two 8 mm projectors and one twenty dollar bill.
On June 4, 1976, over one year later, the Parish of Jefferson filed this action pursuant to R.S. 13:4711[2] to abate and enjoin the nuisance of obscenity (as defined in R.S. 14:106) alleged to exist at the defendant book store. Prior to trial on the merits, the defendant filed numerous pre-trial motions including a motion to suppress the seven cartons of material that were seized from the defendant book store. (Two cartons were seized pursuant to the warrant). After a hearing on the motion to suppress, the trial judge held that the search warrant was valid and ruled that the materials seized pursuant to the warrant were admissible in the injunction proceeding. (While the trial judge did not specifically suppress the materials seized in the warrantless searches, none of the items so seized were admitted into evidence at trial and do not form a part of this record).
The Court of Appeal affirmed the trial judge's ruling that the evidence seized pursuant to the warrant was admissible. However, the appellate court did not consider the constitutional prohibitions against unreasonable searches and seizures of the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution, holding that, since this was not a criminal proceeding, the constitutional proscriptions against unreasonable searches and seizures were inapplicable.
The questions thus presented by this review are: (1) are the constitutional prohibitions against unreasonable searches and seizures applicable to this proceeding and (2) if so, did the seizure of materials pursuant to this warrant comply with constitutional requirements?
The Court of Appeal held that in a civil action such as this, the Fourth Amendment relating to illegal searches and seizures was not relevant. The court reached this conclusion through an erroneous interpretation of Gulf States Theatres of Louisiana, Inc. v. Richardson, 287 So.2d 480 (La.1973).
The Fourth Amendment to the United States Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Article 1, § 5 of the Louisiana Constitution provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
Neither constitutional provision restricts its applicability to criminal cases. The United States Supreme Court has specifically applied the protections of the First and Fourth Amendments when allegedly obscene material is sought to be regulated in civil proceedings. In Marcus v. Search Warrant of Property, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the state had brought a civil forfeiture proceeding against the defendant due to his sale of allegedly obscene materials. In that case a circuit judge had signed numerous search warrants authorizing:
*162 "`. . . any peace officer in the State of Missouri * * * [to] search the said premises * * * within 10 days after the issuance of this warrant by day or night, and * * * seize * * * [obscene materials] and take same into your possession * * *.'" 367 U.S. at 722, 81 S.Ct. at 1711, 6 L.Ed.2d at 1131.
The Supreme Court held that the evidence seized pursuant to the warrants must be suppressed and that states were not free to adopt whatever procedures they pleased to deal with obscenity without regard to constitutionally protected speech. Since Missouri's civil procedure to condemn obscene material lacked safeguards to assure that non-obscene material received the constitutional protection to which it was entitled, the Missouri procedure was struck down. See also, A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). For further cases applying the Fourth Amendment guarantees in civil proceedings see e. g., Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). See also, Annot. 5 A.L.R.3d 670 (1966).
Article 1, § 5 of the Louisiana Constitution gives standing to "any person adversely affected by a search or seizure" to "raise its illegality in the appropriate court." Regardless of the fact that our Code of Civil Procedure does not provide for a motion to suppress illegally seized evidence, both the United States and Louisiana Constitutions require suppression of unconstitutionally seized material on motion by the affected party.
Plaintiff's argument that obscene materials are unprotected by the First Amendment of the United States Constitution begs the question. The danger to restraint of protected expression requires the application of constitutionally sanctioned procedures for the seizure of printed materials. Printed material, offered for sale to the public, cannot constitutionally be seized for obscenity without a prior judicial determination that the matter to be seized is (at least probably) obscene.[3]
Since constitutional procedures govern seizures of printed matter, we must determine whether the seizure here was unreasonable by established constitutional standards. The Court of Appeal held that as long as a speedy adversary hearing was available after the seizure (to litigate the issue of obscenity), allegedly obscene material could be seized prior to the initiation of the injunction suit without regard to the reasonableness of the search and seizure. In Gulf States Theatres of Louisiana, Inc. v. Richardson, supra, relied on by the Court of Appeal, the material was seized pursuant to a warrant issued by a magistrate; the question *163 before this court was the constitutionality of the predecessor to R.S. 13:4711 et seq. Thus, the case did not and could not hold that a valid search warrant was not required when the evidence seized was to be used in a civil suit. In fact, the court indicated that in civil proceedings it might be necessary always to have a complete adversary hearing prior to seizure. The pertinent language is as follows:
"In State v. Eros Cinema, (262 La. 706, 264 So.2d 615 (1972)), this Court found that there was no way to preserve the best evidence in a criminal prosecution for exhibiting an obscene film except upon seizure of the film under search warrant. For this reason, we held that such a seizure is permissible in the limited quantity necessary where there are proper safeguards for establishing probable cause and for providing quick judicial determination on the merits, review, and final judgment. Our reason for believing this brief ex parte seizure, or, if you will, temporary suppression, was necessary in that criminal prosecution does not exist in this civil suit to abate a nuisance. We found there that in a criminal prosecution the Fifth Amendment right against self-incrimination would not permit a subpoena duces tecum. However, in a civil proceeding under the nuisance statute a subpoena duces tecum may be used to obtain materials desired as evidence in the proceeding. The compelling reasons for permitting a seizure for evidence under a constitutional warrant as provided in the Fourth Amendment, do not exist in a proceeding wherein suppression of the showing of the particular film alleged to be obscene and the closing of the theatre in which it is shown are sought.
"A thorough consideration of these cases leads us to conclude that in a civil proceeding to abate an obscene expression as a nuisance there can be no prior restraint without an adversary judicial adjudication." 287 So.2d at 488-89.
However, in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), the Supreme Court held that an adversary hearing prior to a seizure by lawful warrant was not required. Nevertheless, the court stated that "the necessity for a prior judicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be fully considered in light of First Amendment guarantees . . ."
(Emphasis added). 413 U.S. at 493, 93 S.Ct. at 2795, 37 L.Ed.2d at 755.
It is clear that at the very least, prior to seizure, there must be a judicial determination as to the obscenity of the materials. In Marcus v. Search Warrant, supra, warrants were issued for the seizure of allegedly obscene materials, which warrants were based on the conclusory allegations of a police officer. The warrants authorized the police to seize any "obscene" materials located on certain premises. The Supreme Court struck down the procedure because the warrants were issued without any examination by the issuing judge of any of the materials alleged to be obscene. The court used the following language in pointing out the infirmities in the warrants:
"We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer's belief, or otherwise to argue against the propriety of the seizure to the issuing judge, still the warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene. The warrants gave the broadest discretion to the executing officers; they merely repeated the language of the statute and the complaints, specified no publications, and left to the individual judgment of each of the many police officers involved the selection of such magazines as in his view constituted `obscene * * * publications.'

*164 ". . . It is no reflection on the good faith or judgment of the officers to conclude that the task they were assigned was simply an impossible one to perform with any realistic expectation that the obscene might be accurately separated from the constitutionally protected. They were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity. . . ." 367 U.S. at 731-32, 81 S.Ct. at 1716, 6 L.Ed.2d at 1136.
Relying on the Marcus decision, this court in State v. Neal, 279 So.2d 172, 175 (La. 1973) held fatally defective a search warrant which authorized the seizure of "lewd, lascivious, filthy and obscene books, magazines, pamphlets, pictures and films . ." In holding the seizure of materials pursuant to that warrant to be impermissible this court said:
"However, in each instance, the Supreme Court held the seizure constitutionally invalid, and it did not reach the merits of the condemnation statutes nor of the obscenity of the seized publications. The decisions flatly hold that a blanket seizure of all publications, or one made upon the unilateral determination of obscenity by the seizing officer, is so constitutionally deficient as to invalidate totally the seizure. No authority is cited in support of the state's contention that the First Amendment invalidates unconstitutional seizures in one type of proceeding and not in criminal proceedings; and we could find none.
"In short, the decisions cited hold that, while under limiting conditions a search warrant may be used to secure evidence in an area potentially within the reach of the First Amendment, nevertheless blanket or general search warrants shall not be used as a method of ex parte censorship by seizing all copies of all publications felt by some members of the public to be obscene. The decisions further hold that, in this sensitive area, seizures may be made only upon the constitutionally informed determination of a magistrate, rather than at the whim of a seizing police officer. Otherwise, a bookstore could be effectively closed, and publications effectively suppressed although entitled to the protection of our constitutional guarantees, without and while awaiting a judicial determination whether the publications seized were in fact `obscene'". (Emphasis added).
See also, Lee Art Theater v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968).
The warrant and seizure in this case suffers from the same infirmity. Although the affiant police officers had purchased three specific books and had seen two films prior to applying for the search warrant, there is no indication that any of those books had been scrutinized by the issuing magistrate. Even if the neutral magistrate had personally viewed the materials and determined that they were obscene, the warrant is defective because it did not limit its authorization to the seizure of materials already determined by the magistrate to be obscene. This warrant authorized precisely that type of "blanket or general search," granting the unlimited discretion to the seizing officer which has been condemned in this cases discussed.
". . . Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness." Roaden v. Kentucky, 413 U.S. 496, 504, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757, 764 (1973).
Because of the specific constitutional guarantees of freedom of speech and press, state interference with activity which might be protected is more carefully limited by federal constitutional decisions than *165 state interference with activities not presumably protected by specific constitutional provisions. States are not as free to regulate speech and printed matter as they are to regulate other conduct determined by legislatures to be criminal. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). What is an "unreasonable" seizure may depend on the setting and the material seized. Roaden v. Kentucky, supra. Police seizure without a warrant is prior restraint of First Amendment freedoms, and is, in itself, unreasonable. Roaden v. Kentucky, supra.
Not only must the police supply factual information in the application for the warrant sufficient to convince the magistrate that the material to be seized is probably obscene; the police are restricted in the execution of the warrant to specific materials the magistrate has determined, based on the facts supplied him, to be probably obscene. Neither the conclusory determination of the police before the warrant issues, nor after the warrant issues, that printed material is obscene, supplies the safeguards against possible invasion of specifically protected constitutional rights. There is no "plain view" doctrine in First Amendment cases.[4] The warrant must particularly describe the material to be seized. As stated in Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431, 437 (1965):
"In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the `things to be seized' is to be accorded the most scrupulous exactitude when the `things' are books, and the basis for their seizure is the ideas which they contain. . . . No less a standard could be faithful to First Amendment freedoms. The constitutional impossibility of leaving the protection of those freedoms to the whim of the officers charged with executing the warrant is dramatically underscored by what the officers saw fit to seize under the warrant in this case."
Therefore, the trial judge should have granted defendant's motion to suppress the evidence seized pursuant to the warrant.
As noted above the injunction as amended by the Court of Appeal restrains the defendant from distributing any obscene materials and then defines "obscene materials" by using the language of R.S. 14:106.[5] Thus, the injunction enjoins distribution of materials not yet published and not yet judicially determined to be obscene. The injunction is overly broad; it is a prohibited prior restraint upon the right of free speech protected by our federal and state constitutions.
The United States Supreme Court has stated on many occasions:
". . . "`Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its *166 constitutional validity.'" New York Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971), quoting Bantam Books, Inc. v. Sullivan, 372 U.S. [58], at 70, 83 S.Ct. [631], at 639 [9 L.Ed.2d 584]; Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968). See Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)." Heller v. New York, 413 U.S. 483, 491-92, 93 S.Ct. 2789, 2794, 37 L.Ed.2d 745, 754 (1973).
Furthermore, the applicable decisions have "consistently recognized that the procedures by which a State ascertains whether certain materials are obscene must be ones which ensure `the necessary sensitivity to freedom of expression,' Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649, 654 (1965)." McKinney v. Alabama, 424 U.S. 669, 674, 96 S.Ct. 1189, 1193, 47 L.Ed.2d 387, 392 (1976).
Although the Supreme Court has recognized the constitutional validity of certain state obscenity injunction proceedings, see e. g. Kingsley Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), none of these cases have approved of the use of broad injunctions such as the one issued in this case. In Kingsley Books a New York injunction statute was upheld because "as authoritatively construed, it studiously withholds restraint upon matters not already published and not yet found to be offensive." Kingsley Books v. Brown, 354 U.S. 436, 445, 77 S.Ct. 1325, 1330, 1 L.Ed.2d 1469, 1476 (1957). Likewise, Paris Adult Theatre I v. Slaton, 413 U.S. 49, 55, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446, 455 (1973), did not disapprove of the Georgia statute because it "imposed no restraint on the exhibition of the films involved in [the] case until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected."
While these cases did not directly confront the issue before us, that is an injunction attempting to enjoin distribution of future publications not judicially determined to be obscene, other cases have clarified that such an injunction would be unconstitutional. Earlier United States Supreme Court cases appeared to hold that in civil proceedings concerning restraints upon distribution of allegedly obscene materials an adversary hearing was required before any restraint was placed upon the materials. A Quantity of Copies of Books v. Kansas, supra. However, in Heller v. New York, supra, the Court clarified the applicable principles:
". . . This Court has never held, or even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. See Times Film Corp. v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961); Kingsley Books, Inc. v. Brown, 354 U.S. 436, 440-442, 77 S.Ct. 1325, 1327-1328, 1 L.Ed.2d 1469 (1957). . ."
". . .
"In United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), and Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), we held that `"because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint."' 402 U.S., at 367, 91 S.Ct., at 1403, quoting 380 U.S., at 58, 85 S.Ct., at 738 (emphasis added). Those cases involved, respectively, seizure of imported materials by federal customs agents and state administrative licensing of motion pictures, both civil procedures directed at absolute suppression of the materials themselves. Even in those cases, we did not require that the adversary proceeding must take place prior to initial seizure. Rather, it was held that a judicial determination must occur `promptly so that administrative delay does not in itself become a form of censorship *167 United States v. Thirty-Seven Photographs, supra, 402 U.S., at 367, 91 S.Ct., at 1404 (1971); Freedman v. Maryland, supra, 380 U.S., at 57-59, 85 S.Ct., at 738-739 (1965). See Blount v. Rizzi, 400 U.S. 410, 419-421, 91 S.Ct. 423, 429-430, 27 L.Ed.2d 498 (1971); Teitel Film Corp. v. Cusack, 390 U.S. 139, 141-142, 88 S.Ct. 754, 755-756, 19 L.Ed.2d 966 (1968); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70-71, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).
"In this case, of course, the film was not subjected to any form of `final restraint,' in the sense of being enjoined from exhibition or threatened with destruction. A copy of the film was temporarily detained in order to preserve it as evidence. There has been no showing that the seizure of a copy of the film precluded its continued exhibition.

. . . . .
". . .
"Petitioner's reliance on the Court's decisions in Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrants of Property at 104 East 10th St., Kansas City, Mo., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), is misplaced. Those cases concerned the seizure of large quantities of books for the sole purpose of their destruction, and this Court held that, in those circumstances, a prior judicial determination of obscenity in an adversary proceeding was required to avoid `danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books.' A Quantity of Copies of Books v. Kansas, supra, 378 U.S., at 213, 84 S.Ct., at 1727 (1964). We do not disturb this holding. Courts will scrutinize any large-scale seizure of books, films, or other materials presumptively protected under the First Amendment to be certain that the requirements of A Quantity of Books and Marcus are fully met. `"Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."' New York Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971), quoting Bantam Books, Inc. v. Sullivan, 372 U.S., at 70, 83 S.Ct. at 639; Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968). See Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).
"But seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned.
"With such safeguards, we do not perceive that an adversary hearing prior to a seizure by lawful warrant would materially increase First Amendment protection. Cf. Carroll v. President and Comm'rs of Princess Anne, supra, 393 U.S., at 183-184, 89 S.Ct. at 352-353. The necessity for a prior judicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be fully considered in light of First Amendment guarantees, with only *168 a minimal interference with public circulation pending litigation. . ." 413 U.S. 483, 488, 489-90, 491-93, 93 S.Ct. 2789, 2792, 2793, 2794-95, 37 L.Ed.2d 745, 751, 752-55.
Thus, our highest court has held that an adversary hearing is required before any final restraint may be placed upon the distribution of allegedly obscene materials.
In Gulf States Theatres of Louisiana, Inc. v. Richardson, supra, we noted, in discussing injunctions issued under our statutory scheme, that "[t]his suppression is equally as effective as, and perhaps more onerous than, a seizure under search warrant. Moreover, the order for injunction acts as a mass suppression such as was condemned in Marcus." 287 So.2d at 487. We concluded, therefore, after analyzing the applicable jurisprudence, that the "very minimum constitutional standard required before there can be a suppression of an expression alleged to be obscene is an independent judicial finding of probable cause that the expression is obscene and therefore not constitutionally protected speech." 287 So.2d at 486. Since the injunction issued in this case acts as a form of final censorship by suppressing distribution of materials presumptively protected under our federal and state constitutions and not yet judicially determined to be obscene, it is over broad. Accordingly, insofar as it attempts to restrain distribution of materials other than those already judicially determined to be obscene after an adversary hearing, it is void.
For the foregoing reasons, the ruling on the motion to suppress is reversed and the injunction is dissolved. The case is remanded for further proceedings not inconsistent with this opinion.
SANDERS, C. J., and SUMMERS, J., dissent with written reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
As I construe the majority holding, it extends the exclusionary rule to all civil proceedings. I am unwilling to go so far.
The federal decisions relied upon in the majority opinion involved forfeiture proceedings, which have been assimilated to criminal proceedings. See, e. g., One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 1249, 14 L.Ed.2d 170 (1965), in which the court stated: "[T]hough they may be civil in form, are in their nature criminal." The decision in Camero v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), did not deal with the exclusionary rule. It merely barred the criminal prosecution of a citizen for rejecting a warrantless administrative search of his premises.
The present suit is a civil action for an injunction. The United States Supreme Court has not applied the exclusionary rule to this type of action, and I would not do so based on the authorities cited.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.
NOTES
[1] The Court of Appeal amended the injunction as follows:

"Accordingly it is ordered that there be judgment in favor of the Parish of Jefferson and against the defendant Bayou Landing Limited, Inc., doing business as Airline Highway Adult Books and Movies, enjoining and restraining it, its agents, servants, employees, lessees, or any other person acting under its authority from selling, distributing, exhibiting or displaying for commercial gain obscene materials depicting the following activities defined by R.S. 14:106 as hard core sexual conduct:
"`(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals or an animal and a human being; or
"`(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva or female breast nipples; or
"`(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals or female breast nipples, or the condition of being fettered, bound or otherwise physically restrained, on the part of one so clothed; or
"`(d) Actual, simulated or animated, touching, caressing or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
"`(e) Actual, simulated or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured and marketed for such purpose.'" 341 So.2d at 28.
[2] In Connick v. Lucky Pierre's, 331 So.2d 431 (1976), we held R.S. 13:4713 void for vagueness because the statute did not give adequate notice of what action a tenant must take to stop prostitution by others. We did not hold the statute unconstitutional with respect to prohibited activity by the tenant, who was a defendant in the action to abate. See State v. Guillory, 339 So.2d 970 (La.App.1976), writs den. 341 So.2d 407 (La.1977).
[3] In brief and on oral argument the plaintiff presented the following additional contention: these materials were seized by the Jefferson Parish Sheriff's Office in connection with a criminal investigation and were not seized by the plaintiff, Parish of Jefferson. After the seizures, the materials were in the possession of the Clerk of Court and were subpoenaed by the parish for use in this suit for injunctive relief. Therefore, the argument concludes, since the parish did not direct nor make the seizures and obtained the materials lawfully by way of subpoena, they should not be suppressed in this suit.

The argument is a variation of the "silver platter" doctrine ( Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949)), and is without merit. The seizure by the sheriff's office was constitutionally defective. To permit the introduction of this evidence would allow police to disregard the United States and Louisiana Constitutions and turn over the illegally seized materials to other authorities to be used in another proceeding.
In Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), the Supreme Court held that evidence illegally seized was inadmissible in federal court even when the seizures were made by state agents. The court reasoned that the rule excluding in federal criminal prosecutions evidence obtained by federal agents in violation of a defendant's Fourth Amendment rights is not only logically required, but is also deterrent in nature, designed to compel respect for constitutional guarantees by removing any incentive to disregard them. Therefore evidence sought to be introduced in federal court, unconstitutionally seized by state agents, must be suppressed.
There is no place for the "silver platter" doctrine in Louisiana, either under federal law or the State Constitution.
[4] For example, except for two classes of materials which the statute attempts to explicitly describe, there cannot even be an arrest or prosecution for exhibition or dissemination of obscene material until after a judicial determination in an adversary hearing with notice to the accused that the material is obscene. R.S. 14:106F(1) provides:

"Except for those motion pictures, printed materials and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, close-up depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts, no person, firm or corporation shall be arrested, charged or indicted for any violation of a provision of this section until such time as the material involved has first been the subject of an adversary hearing under the provisions of this section, wherein such person, firm or corporation is made a defendant and, after such material is declared by the court to be obscene, such person, firm or corporation continues to engage in the conduct prohibited by this section. The sole issue at the hearing shall be whether the material is obscene."
[5] It should be noted that the injunction as amended by the Court of Appeal only incorporates the definition of hard core sexual conduct as provided in R.S. 14:106. Since the injunction fails to mention the other two elements necessary to a finding of obscenity (the materials appeal to prurient interests and the material as a whole lacks serious literary, artistic, political or scientific value), the injunction may be void for this reason alone.