329 So.2d 713 (1976)
STATE of Louisiana
v.
Sam H. JAMES and Doris Reed Enloe Finch.
No. 57180.
Supreme Court of Louisiana.
March 29, 1976.
William J. Guste, Jr., Atty. Gen., Walter L. Smith, Jr., L. J. Hymel, Jr., Asst. Attys. Gen., R. Neal Wilkinson, Staff Atty; Ossie Brown, Dist. Atty., Edwin O. Ware, Special Prosecutor, Alexandria, for plaintiff-appellant.
Robert L. Kleinpeter, Baton Rouge and Gerard F. Thomas, Jr., Natchitoches, *714 Kleinpeter & Nevils, New Orleans, for defendant-appellee, Sam H. James.
Stacey Moak, Cicero & Moak, Baton Rouge, for defendant-appellee, Doris Reed Enloe Finch.
MARCUS, Justice.
Sam H. James, Sheriff of Natchitoches Parish, and Doris Reed Enloe Finch were indicted by the East Baton Rouge Parish Grand Jury for simple escape in violation of La.R.S. 14:110. Additionally, Sam H. James was indicted by the East Baton Rouge Parish Grand Jury for malfeasance in office in violation of La.R.S. 14:134. Both defendants moved to quash the indictments and alleged, inter alia, that East Baton Rough Parish was not a parish of proper venue for the trial of the offenses charged. The trial judge granted defendants' motions to quash on the ground of improper venue. The state has appealed from this adverse ruling pursuant to La.Code Crim.P. art. 912(B)(1) (1966).[1]

I.
Although the issue has not been briefed or raised by either of the parties, we note, ex proprio motu, that this court is without jurisdiction to entertain the state's appeal. Article V, section 5(D)(E) of the 1974 constitution, which is applicable in this case,[2] confers upon the supreme court appellate jurisdiction in the following criminal cases:
(D) Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional; (2) the defendant has been convicted of a felony or fine exceeding five hundred dollars or imprisonment exceeding six months actually has been imposed.

(E) Other Criminal Cases; Review. In all criminal cases not provided in Paragraph (D)(2) of this Section, a defendant has a right of appeal or review, as provided by law.
(Emphasis added.) Article V, section 5(D)(2) provides that a case is appealable to the supreme court only where the defendant has been convicted of a felony or a fine exceeding five hundred dollars or imprisonment exceeding six months actually has been imposed. Article V, section 5(E) authorizes the legislature to grant a right of appeal in other criminal cases, but only to the defendant. The clear and unambiguous language of these provisions compels us to conclude that the state has no right under the present constitution to invoke the criminal appellate jurisdiction of the supreme court prior to defendant's conviction of a felony or the actual imposition of a fine exceeding five hundred dollars or imprisonment exceeding six months, except in criminal cases in which a law or ordinance has been declared unconstitutional. La.Const. art. V, sec. 5(D)(1) (1974).
In contrast, the 1921 constitution vested the supreme court with appellate jurisdiction in the following criminal cases:

Appellate jurisdiction; criminal. The appellate jurisdiction of the Supreme Court shall also extend to criminal cases on questions of law alone, whenever the *715 penalty of death, or imprisonment at hard labor may be imposed; or where a fine exceeding three hundred dollars or imprisonment exceeding six months has been actually imposed.
La.Const. art. 7, § 10(7) (1921) (emphasis added).
Under the 1921 constitution, which extended our appellate jurisdiction to criminal cases where the death penalty or imprisonment at hard labor (i. e., a felony, La.R.S. 14:2(4); La.Code Crim.P. art. 933(3)) may be imposed, we held that the state, as well as the accused, had the right to appeal from a prejudicial judgment or ruling by the trial court that finally disposed of the case. State v. Shushan, 204 La. 672, 16 So.2d 227 (1943) (upholding the state's right to appeal a nolle prosequi entered by the trial court on a plea of prescription). See also La.Code Crim.P. arts., 540, 541 (1928). Article 912(B) of the 1966 Code of Criminal Procedure, in delineating the state's right to appeal adverse judgments or rulings (other than verdicts of acquittal), was intended to codify the existing jurisprudence. La.Code Crim.P. art. 912, Official Revision Comment (b) (1966). We have stated, however, that article 912(B) is applicable only where the supreme court was conferred with appellate jurisdiction by the constitution. State v. Murphy, 254 La. 873, 227 So.2d 915 (1969).[3]
Under the 1974 constitution, this court is no longer[4] vested with criminal appellate jurisdiction before such time as defendant has been convicted of a felony or a fine exceeding five hundred dollars or imprisonment exceeding six months has actually been imposed, except in criminal cases in which a law or ordinance has been declared unconstitutional. Hence, article 912(B) is no longer applicable insofar as it permits the state to appeal pre-conviction final adverse judgments or rulings. To that extent, article 912(B) is in conflict with the present constitution, and ceased as of its effective date. La.Const. art. XIV, sec. 18(B) (1974).

II.
Where the state desires review of a final pre-conviction adverse judgment or ruling in a criminal case, application to this court for a writ of review under our supervisory[5] jurisdiction is now the proper procedure for it to follow. Because this case is the first to have considered the validity of article 912(B) under the 1974 constitution, we shall treat the state's appeal as an application for a writ of review.
The state alleges that the trial judge erred in quashing the indictments on the ground that East Baton Rouge Parish is not a parish of proper venue for trial of the offenses charged.
Every person charged with a crime is entitled to a trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. La.Const. art. I, sec. 16 (1974). See also La.Code Crim.P. art. 611 (1966). Improper venue may be raised by motion to quash, and even if the issue of venue has been passed upon by the judge prior to trial, the state on the trial shall have the burden of proving proper venue *716 beyond a reasonable doubt. La.Code Crim.P. art. 615 (1966).
The facts in this case show that defendant Sam H. James, Sheriff of Natchitoches Parish, flew to East Baton Rouge Parish in July, 1974 for the purpose of obtaining from Elayn Hunt, Director of the Louisiana Department of Corrections, an order that would permit the release of defendant Doris Finch, an inmate serving a five-year sentence for manslaughter at the Louisiana Correctional Institute for Women at St. Gabriel in Iberville Parish. The order was secured after a meeting with Mrs. Hunt at her office that lasted approximately forty-five minutes. Deputy Sheriff Asher Vandenburg of Natchitoches Parish and Stacey Moak, Doris Finch's attorney, were also present at this meeting. According to Mrs. Hunt's testimony at the hearing on the motions to quash the indictments, Sheriff James told her during their discussion that he desired Doris Finch be released from custody at St. Gabriel in order that she might visit with her dying father in Natchitoches Parish. Mrs. Hunt testified that Sheriff James said at the meeting that Doris Finch would be in his custody during the time she was on release and that he would be responsible for her. They also discussed the possibility of using defendant Finch's clerical skills in a program at the Natchitoches Parish jail. Mrs. Hunt testified that no conditions were attached to the prisoner's release. Sheriff James and Deputy Sheriff Vandenburg also testified at the hearing on the motions to quash and recounted a similar version of the matters discussed in Mrs. Hunt's office. According to the testimony of both Mrs. Hunt and Sheriff James, it is not uncommon practice to allow the temporary release of an inmate under a sheriff's supervision. La.R.S. 15:833.
After securing the order permitting Doris Finch's release, Sheriff James, accompanied by Deputy Sheriff Vandenburg and Mr. Moak, proceeded to St. Gabriel in Iberville Parish, where defendant Finch was discharged under his custody. They then returned to Natchitoches Parish, where defendant Finch visited her ill father. She was brought back to St. Gabriel in March, 1975. During the period of her release, she made a trip to East Baton Rouge Parish to enroll her daughter in a school there. At the hearing there was also testimony to the effect that she may have spent some time in Ascension Parish. Sheriff James testified, however, that he kept in contact with defendant Finch during her absence from Natchitoches Parish.
It is the state's contention that Sheriff James failed to maintain adequate supervision of Doris Finch while she was released from prison. Averring in its brief that a "conspiracy" in Natchitoches Parish had taken place to secure defendant Finch's release by unlawful means, the state alleges that Sheriff James never intended to supervise the inmate and that he misrepresented his intentions to Mrs. Hunt at their meeting. According to the state, Doris Finch's release from the prison constituted an escape, Sheriff James was a principal in that crime, and Sheriff James' failure to maintain adequate supervision of the inmate also constituted the crime of malfeasance in office. Because the release of Doris Finch would not have been possible but for the order of release that Sheriff James obtained in East Baton Rouge Parish from Mrs. Hunt, the state contends that their meeting constitutes an element of both crimes, and that venue is therefore proper in East Baton Rouge Parish.
The state's contention is without merit. No evidence was adduced at trial to show that Doris Finch had conspired with Sheriff James before her release in Iberville Parish to procure the order from Mrs. Hunt by unlawful means. Further, the state presented no evidence to show that Sheriff James did not intend to keep Doris Finch under his supervision at the time he secured the order for her release in East Baton Rouge Parish. Nor can such an intent be reasonably inferred from *717 the subsequent facts. We therefore find no evidence to show that any acts constituting an element of the crimes of escape and malfeasance in office were committed in East Baton Rouge Parish.
We conclude from the evidence presented at the hearing that the state failed to satisfy its burden of proving that an element of the crime of simple escape (with which both defendants are charged) or malfeasance in office (with which only Sheriff James is charged) was committed in East Baton Rouge Parish. Hence, the trial judge did not err in quashing the indictments on the ground that East Baton Rouge Parish was not a parish of proper venue for the trial of the offenses charged.

DECREE
For the reasons assigned, the appeal is dismissed, and the application for a writ of review is denied.
SANDERS, C. J., concurs in the result only for the reasons assigned by TATE, J.
SUMMERS, J., although I agree with the ruling on appellate jurisdiction, I concur.
TATE, J., concurs in result and assigns reasons.
DENNIS, J., concurs in the result only for the reasons assigned by TATE, J.
TATE, Justice. (concurring in result only)
The majority has declared unconstitutional La.C.Cr.P. art. 912(B), which gives the state the right to appeal from certain rulings dismissing a prosecution. It has done so, although no pleading alleges the invalidity of this statute and although the defendants themselves do not question its constitutionality.
The effect of this ruling is not only to deprive the state of review as of right of rulings which dismiss prosecutions before trial. Its practical consequence is also to deprive the state of any opportunity to contest by application for rehearing an initial denial by this court of the state's application for discretionary review, since applications for rehearing as to the denial of applications for writs may not be considered. Rule IX, Section 6, Rules of Supreme Court (1973).
The basis for the majority's holding are the provisions of the Louisiana Constitution of 1974 providing for appellate jurisdiction of this court, which specifies such appeals or review of right only for a defendant. Art. V, Sections (D), (E).
In the first place, the change in language from the 1921 constitution's provision did not intend any change, nor was it actually intended to deprive the state of any right of review it had under the 1921 constitution. See Louisiana Constitutional Convention of 1973, Verbatim Transcripts, August 15, 1973, Volume 9, pp. 83-84.
More important, however, the mandatory provision of a constitutional right for a defendant to appeal, does not exclude the legislative power to provide a remedy by which the state may appeal dismissal of prosecutions preliminary to a trial on the merits.
The pertinent enacting language of Section 5(D) is that a felony "case shall be appealable to the supreme court if [etc.] * * *." Similarly, Section 5(E) provides that, in all other criminal cases, "a defendant has a right of appeal or review". The language does not exclude the legislature's power to provide for review of other criminal rulings than those that these constitutional provisions mandatorily specify must have a right of appellate review.
No intent can be found from these provisions, mandatorily requiring appellate review when sought by defendants, to prohibit the legislature from affording appellate review when sought by the state of pre-trial rulings dismissing a prosecution. The provisions do not, for instance, provide *718 that the exclusive appellate jurisdiction of this court shall consist of the mandatory appellate review thereby provided.
Contrast the provisions, for example, with Article 5, Section 16, which provides that a district court "shall have exclusive original jurisdiction of felony cases", thus preventing the legislature from placing such jurisdiction in another court. In short, unlike in the last-cited section, no language in the constitutional provisions relied upon by the majority prohibits the legislature from providing for criminal appellate jurisdiction as to other types of criminal rulings than those therein specified.
My brethren of the majority, I fear, are falling into the same attitude of restrictive judicial interpretation as of the 1921 constitution, which thereby necessitated frequent amendments in order to permit the legislature to meet current needs not specifically provided for by that lengthy previous charter. We overlook that the 1974 constitution was intended to provide only a basic structure of government and only basic limitations upon the power of the legislature to act for the people of the present and the future.
As stated by Professor W. Lee Hargrave of the Louisiana State University Law School, and a leading figure in the drafting of the 1974 Constitution, see 36 La.L.Rev. 533 (1975):
"Though Louisiana courts have accepted and applied the principle that a state legislature possesses plenary power to do anything not prohibited by the constitution even absent a grant of power, the fact that the 1921 constitution contained so many grants of power, often grants coupled with explicit or implicit limitations, resulted in the general principle being applied less often than it might otherwise have been. The 1974 constitution, deliberately short, intentionally concise, and knowingly avoiding grants of power, will require application of the principle more often. The convention used the principle as its basic starting point, and a narrow construction of legislative power under the document would thwart its purpose of giving more flexibility to the legislature."
This leading constitutional scholar also notes that General Guideline No. 1 of the convention's Manual on Style and Drafting, 1 Official Journal of the Proceedings of the Constitutional Convention of 1973, 769 (1973), provided as a basic principle of the drafting of the constitution: "The general rule of state constitutional interpretation is: The provisions of a state constitution are limitations on the power of the people exercised through the legislature; what is not prohibited by the constitution is permitted. Therefore, the legislature is empowered to enact any law not prohibited by the constitution; it is unnecessary to specify, for example: The legislature has the power to enact laws providing for punishment for crime. In the absence of constitutional prohibition, the legislature has that power."
Thus, in Hainkel v. Henry, 313 So.2d 577, 579 (La.1975), citing long-established precedents of this state, we held: "* * * in the absence of a particular constitutional provision that limits the power of the legislature to act in the respects assailed, a legislative action cannot be invalidated as contrary to the state's constitution."
While the 1974 constitution provides for mandatory review by aggrieved defendants, it does not prohibit the legislature from affording the state equivalent review where a prosecution is dismissed before trial. The majority is in error in finding a constitutional prohibition against the legislature so doing.
I respectfully dissent from this court's shackling the power of the legislature to provide this traditional remedy of review for the state, in the absence of any express constitutional prohibition and in the complete absence of any constitutional intent *719 to deprive the legislature of the power to do so. I do concur, however, insofar as the majority, on review, finds no error in the trial court's dismissal of these prosecutions because of the improper venue for them.
NOTES
[1] Article 912(B) of the Code of Criminal Procedure provides:

B. The state cannot appeal from a verdict of acquittal. Adverse judgments or rulings from which the state may appeal include, but are not limited to, judgments or rulings on:
(1) A motion to quash an indictment or any count thereof;
(2) A plea of time limitation;
(3) A plea of double jeopardy;
(4) A motion in arrest of judgment;
(5) A motion to change the venue;
(6) A motion to recuse; and
(7) Repealed.
[2] The instant prosecution was begun by indictments filed on May 8, 1975.
[3] In Murphy we dismissed the state's appeal from the quashing of an indictment charging malfeasance in office, a misdemeanor. Thus, under the 1921 constitution, the state in the instant case would have had no right to appeal from the quashing of the indictment charging Sheriff James with malfeasance in office.
[4] The verbatim transcripts of the 1973 constitutional convention proceedings indicate that the delegates, in approving the change in language from the corresponding provision in the 1921 constitution, did not discuss the effect that this change would have on the state's then-existing right to appeal adverse judgments or rulings. 9 Transcript of the 1973 Constitutional Convention, 30th Day, at 83-84.
[5] La.Const. art. V, sec. 5(A) (1974).