353 So.2d 225 (1977)
STATE of Louisiana, Appellee,
v.
John T. LUCK d/b/a Tommy's News et al., Appellants.
STATE of Louisiana, Appellee,
v.
Robert H. GILMORE d/b/a Gilmore's Newsstand et al., Appellants.
Nos. 60177 and 60178.
Supreme Court of Louisiana.
November 14, 1977.
Concurring Opinion December 13, 1977.
Rehearing Denied December 14, 1977.
*226 William M. Lucas, Jr., Dufour, Levy, Marx, Lucas & Osborne, New Orleans, Robert J. Donovan, Jr., Naff, Kennedy, Goodman, Stephens, Donovan & Parnell, Shreveport, for appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Stephen A. Glassell, Asst. Dist. Atty., for appellee.
TATE, Justice.
The State of Louisiana, represented by the district attorney, filed these two proceedings to determine the obscenity (or not) of certain named publications which the defendants Gilmore and Luck[1] were offering for sale at their news stands. Subsequently the Shreveport News Agency, Inc., wholesale distributor of the publications, was joined as a co-defendant in both prosecutions.
The defendants appeal from adverse judgment, which declared the publications in question to be obscene. The appeals present four identical assignments of error. *227 These assignments principally question the constitutionality of provisions of La.R.S. 14:106, as enacted by Act 274 of 1974, which provides for the crime of obscenity:
Assignments 1 and 2 relate to the constitutionality of the pre-arrest hearing required for a determination of obscenity prior to the filing of criminal charges, La.R.S. 14:106 F (1974);
Assignment 3 relates to the exemption of schools, churches, etc., from criminal prosecution, La.R.S. 14:106 D, which is attacked as an unconstitutional denial to the accused of the equal protection of the laws; and
Assignment 4 relates to the allegedly unconstitutional, because vague and overbroad, definition of acts and conduct punished by the crime of obscenity, La.R.S. 14:106 A.[2] As to this last assignment, we have rejected similar contentions and have found the statute free of constitutional infirmity in the aspects suggested. State v. Amato, 343 So.2d 698 (La.1977). We see no reason to re-examine this recent holding to such effect.
Before discussing the first three assignments, we deem it advisable to review briefly the jurisprudential context in which the 1974 obscenity version of La.R.S. 14:106 was enacted through Act 274 of 1974.
Jurisprudential context of 1974 statute
The pre-1974 version of La.R.S. 14:106 (1972) was declared unconstitutional by this court in State v. Shreveport News, Inc., 287 So.2d 464 (La.1973). In the light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), we declared our statute overbroad, too general, and without the specificity constitutionally required by virtue of Miller. Act 274 of 1974 re-enacted La.R.S. 14:106 to meet these constitutional requirements. It successfully did so. State v. Amato, 343 So.2d 698 (La.1977).
In addition, sub-section F of the 1974 act established a pre-arrest obscenity hearing. This provision was not found in prior versions of La.R.S. 14:106 enacted by Acts 43 of 1942, 314 of 1950, 388 of 1958, 199 of 1960, 87 of 1962, 647 of 1968, 167 of 1970, 605 of 1972, and 743 of 1972. The addition of this protection for a person accused of selling or displaying, etc., obscene materials was an obvious attempt to comply with the constitutional requirements enunciated by this court in Gulf States Theatres of La., Inc. v. Richardson, 287 So.2d 480 (La.1973) and State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972).
In these two decisions, we noted that statutes providing for governmental interdiction of, or the threat of arrest for, sale or display of potentially obscene materials may also violate constitutional rights to freedom of expression, unless adequate procedural safeguards are established for prompt judicial determination as to whether the publications or works are in fact and law obscene.
Without the availability of an immediate judicial determination of obscenity vel non, after adversary hearing, the constitutionally protected expression may be as effectively curtailed or inhibited as may obscene material, although only the latter is not safeguarded in expression by our state and federal constitutions. Prior restraint through threat of arrest may just as effectively silence constitutionally protected expression as would censorship itself, unless procedural mechanisms are provided to secure immediate adversary judicial determination of whether the material attacked ex parte as obscene by governmental agents is actually not so, but is instead within the protection of free expression provided by our constitutions.
I. Constitutionality of pre-arrest hearing to determine whether material is obscene
Assignments 1 and 2 raise issues as to the constitutionality and application of La.R.S. 14:106 F (1974).[3] In attempted compliance *228 with the jurisprudential requirements above summarized, this subsection provides for a pre-arrest hearing before charges of obscenity may be filed.
By this provision, no person shall be arrested or charged with an obscenity violation involving any material, unless (except for hard-core pornography explicitly showing ultimate sex acts) an adversary hearing has first been afforded such person for purpose of determining whether the material is obscene. Subsection F is set forth in full as "Appendix 1" to this opinion. The enactment further provides for the hearing to be held within 72 hours, for the effect of the determination of obscenity of materials at such hearing, and for appellate review of such determination.
By Assignment 1, the defendants attack as vague and indefinite, for certain specified reasons, this statute providing for pre-arrest adversary hearing and judicial determination of obscenity. By Assignment 2, the defendants complain that the district court erred in denying them a jury trial on the issue of obscenity.
The chief complaints of unconstitutional vagueness relate to the alleged failure of the statute to specify the nature of the hearing (civil or criminal), the applicable burden of proof ("preponderance" versus "beyond a reasonable doubt"), the rules of procedure applicable (civil or criminal), or the nature of appellate review (by writ or by appeal of right).
The defendants further complain that a provision entitling the finding of obscenity to be res judicata, La.R.S. 14:106 F(4), unconstitutionally denies the accused to a right of jury determination on the issue of obscenity basic to his innocence or guilt. They finally complain that, since the statutory "appeal" from the determination does not of right stay the proceedings, the statute effectively imposes an unconstitutional prior restraint resulting from the initial determination by the trial court, which cannot normally be reviewed until most of the material is outdated and no longer merchantable anyway.
These contentions are not insubstantial. Nevertheless, we find the statutory section to be constitutional. When construed in the light of the obscenity statute as a whole and in the jurisprudential context of the present statute, the defendants' objections of vagueness are found to be without merit.
We summarize the proper construction of the statute to be as follows:
Nature of hearing and procedure:
In statutory context, the hearing is a criminal proceeding preliminary to the possible institution of criminal charges of obscenity. It is primarily designed to protect an accused from arrest and charge for obscenity by requiring prior thereto (except for hard-core pornography depicting the ultimate sexual act) a judicial determination after adversary hearing of whether the material is in fact obscene and constitutes cause for criminal prosecution.
The rules of criminal procedure apply. Further, in this hearing before the judge alone, the state bears a burden of proving that material is obscene beyond a reasonable doubt: In view of the statutory purpose of protecting freedom of expression, establishing probable cause for prosecution merely by the preponderance of the evidence will not accomplish the statutory purpose of preventing undue invasions or inhibitions of constitutionally protected expression. See McKinney v. Alabama, 424 U.S. 669, 96 S.Ct. 1189, 1195-1201, 47 L.Ed.2d 387 (1976).
Jury Trial
This proceeding preliminary to a criminal prosecution is triable by the judge alone. (Of course, as to the issue of a defendant's innocence or guilt of the crime, he is entitled on the merits to a jury trial by reason of the penalties imposed by the statute. La.R.S. 14:106 G.) The pre-arrest proceeding is in nature of an in rem determination of obscenity, not of a trial of innocence or guilt.
*229 This preliminary determination may be entrusted to the trial judge alone (provided as here the adversary proceeding is surrounded by adequate procedural safeguards), without the necessity of requiring a jury determination (conceding that the test is whether "the average person applying contemporaneous community standards would find that the conduct, taken as a whole, appeals to the prurient interest" La. R.S. 14:106 A(2), Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973)). The hearing pertains to the nature of the material, rather than to the defendant's criminal guilt. See McKinney v. Alabama, 424 U.S. 669, 96 S.Ct. 1189, 47 L.Ed.2d 387 (1976) and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973) (see also Alexander v. Commonwealth, 214 Va. 539, 203 S.E.2d 441 (1974) and 212 Va. 554, 186 S.E.2d 43 (1972)). Contra: McNary v. Carlton, 527 S.W.2d 343 (Mo.1975), noted 45 UMKC L.Rev. 159 (1976). Therefore, no jury trial is required for this preliminary (in rem) hearing, since it is not a trial pertaining to the defendant's innocence or guilt.
Effect of judicial determination that material is obscene:
La.R.S. 14:106 F(4) (see Appendix 1) provides that the determination by a district court shall not be "res judicata in any proceeding in any other judicial district," and that "evidence of any hearing held pursuant to this section [14:106] shall not be competent or admissible in any criminal action for the violation of any other section of this title [i. e., the criminal code]", except as to the issue of "scienter" of a defendant at such hearing. (Italics ours.)
As we interpret this provision (F(4)), its effect is to prevent the judicial determination of obscenity in one judicial district from serving as the basis of prosecution for obscenity in any other judicial district. The provision has the further purpose of preventing the determination by the hearing from being used as evidence in any criminal prosecution whatsoever: except as bearing on the issue of "scienter" with regard to the same material claimed to be obscene by the hearingi. e., to negate any claim of lack of previous knowledge (scienter) of the possibly obscene nature of the materialand then only in prosecutions for violations of provisions of the criminal code other than La.R.S. 14:106.
We do not interpret this provision as authorizing introduction of the trial court's preliminary obscenity determination in the trial before the jury on the merit-issue of innocence or guilt of a violation of La.R.S. 14:106. The jury, not the judge, must make the ultimate determination as to the innocence or guilt of the crime of obscenity arising out of the material involved.
The purpose of the hearing is not to afford evidence against the defendant in the criminal trial. It is rather to protect him from unwarranted prosecution from material arguably protected by our constitutional guarantees of freedom of expression. We regard it as no more admissible in the trial of innocence or guilt than would be, for example, the trial judge's determination in a preliminary examination that there is probable cause for the prosecution.
Appellate review:
La.R.S. 14:106 F(3) (See Appendix 1) provides: "The state or any defendant may appeal from a judgment. Such appeal shall not stay the judgment" (which determined the material is or is not obscene). Although a defendant appeals, he is nevertheless subject to criminal prosecution pending appellate decision.
Preliminarily, we note that the statutory provision of "appeal" from this interlocutory determination of obscenity is apparently not authorized by our state constitution, as construed by a majority of this court. La.Const. of 1974, Art. 5, Section 5(D) provides for an appeal only (1) if a law or ordinance has been declared unconstitutional or (2) if the defendant has been convicted of a felony or of a misdemeanor for which serious penalties have been imposed. See State v. James, 329 So.2d 713 (La.1976). Accordingly, neither state nor defendant *230 may appeal from the determination. However, both have the right to apply for supervisory review in this court. La.Const. of 1974, Art. V, Sections 2 and 5(A).[4]
We should add, however, that supervisory review may afford a more expeditious determination than the appeal, with its required formalities of preparation and delays for rehearing. This remedy of review by supervisory writ is thus consistent with the purposes of the statute.
As to the scope of review, the trial court's determination that material is or is not obscene presents an issue of law fully reviewable by this court. Even the factual determination of obscenity by a trial jury must be subject to full appellate review, to meet constitutional standards designed to effectuate freedom of expression. Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974).
We recognize that the statute permits criminal prosecution, even though final appellate judicial review has not been completed of the trial court's preliminary determination of obscenity. We find no constitutional infirmity in this provision, providing speedy appellate (supervisory) review is furnished by this court. See State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972).
In Eros Cinema, recognizing the possible inhibition to constitutional protected expression by seizure of a single copy for evidence of matter claimed to be obscene, we nevertheless pointed out that, balancing the interest of the state in controlling obscenity, some reasonable inhibition might be permissible, if accompanied by speedy adversary judicial determination of the constitutional issue. We refused to invalidate a seizure made prior to final appellate review, although we did point out that expeditious appellate review must be afforded in order to safeguard constitutional rights.
In the present instance, for example, many of the publications the trial court determined to be obscene were periodicals of monthly issue. If prosecutions for those determined to be obscene were barred until after final appellate review, in effect no charge or arrest could ever be made for obscenity with regard to the issue involveddue to the necessary delays of the judicial system, the periodical determined to be obscene for the month in question would be out of date and no longer on sale.
As in Eros Cinema, however, we do note the trial court's obligation to render judgment expeditiously after the course of the hearing. (We therein fixed a 24-hour period. La.C.Cr.P. Art. 3; 264 So.2d 620.) We likewise note this court's obligation to give immediate consideration to remedial writs sought to review such action, with preferential hearing or summary relief to be afforded if the writ application is granted.
II. Constitutionality of exemption of schools, churches, etc., from obscenity statute
By La.R.S. 14:106 D (1974),[5] the provisions defining and punishing the crime of *231 obscenity were made inapplicable to schools, churches, museums, medical clinics, hospitals, public libraries, and governmental agencies. By Assignment 3, the defendants complain that this exemption denies them the equal protection of the laws. They claim that, on this account, the entire statute (La.R.S. 14:106) is unconstitutional and invalid.
Overview of La.R.S. 14:106 A (1974):
La.R.S. 14:106 (1974)[6] is a highly complex statute which defines the crime of obscenity quite exhaustively. Our principal concern at present is with 14:106 A, which sets forth six separate statements of the criminal act constituting the crime of obscenity.
Section 106 A(1) prohibits the exposure to public view of certain parts of one's body with the intent of arousing sexual desire.[7] This subsection is not at issue in the present case, and requires no further explanation.
In the next two subsections, set forth in full in Appendix 2, the legislature adopted a different statutory technique. In 106 A(2), a class of conduct is defined,[8] and in 106 A(3), a class of material is defined.[9] With the prohibited objects specified, these sections make criminal the trafficking in either *232 the proscribed conduct[10] or material.[11] The legislative intent so reflected is that involvement with such material is not criminal, unless it be for ensuing commercial gain. This intent is reflected both in the range of the description of the proscribed activities ("sale, allocation, consignment, distribution, dissemination, advertisement, exhibition or display" or the "manufacture, publication or printing" for such purposes) and in the definition of "hard core sexual conduct" ("public portrayal, for its own sake, and for ensuing commercial gain. . .").[12]
Equal Protection
The defendants urge that they are unconstitutionally denied the equal protection of the laws by the exemption of schools, museums, public libraries, hospitals, and governmental agencies, etc., from prosecution for the criminal offense of obscenity. They claim that the exemption of various institutions from the force of the statute allows those institutions to carry on the same activities which would be criminal if the actor were not one of the exempted institutions.
We first note that in order for material to be declared obscene, and to serve as the basis for criminal prosecution, it must lack "serious literary, artistic, political or scientific value." R.S. 14:106 A(3). Very little, if any, of the material which has traditionally been available for display or distribution at these institutions would be characterized as lacking one or more of these values. We next observe that the statute is directed at trafficking in obscenity for commercial gain, and that, in general, any material available at such institutions is offered for purposes other than commercial ones.
There does remain, however, the possibility that obscene material might be distributed at these institutions for commercial gain, such as at a bookstore or magazine stand open for purchases by the public. We agree with the defendant's contention that therefore La.R.S. 14:106 D is unconstitutional, insofar as it exempts the listed institutions in trafficking for commercial purposes in hard-core pornography or obscene material, conduct which is made criminal if the actor is a person or institution not exempted by 14:106 D.
The non-exempt persons or entities are deprived of the equal protection of the laws by a classification so made without rational basis for differentiation reasonably related to a valid governmental purpose. See Succession of Robins, 349 So.2d 276 (La.1977) and State v. Johnson, 343 So.2d 705 (1977). Louisiana has no legitimate interest in allowing a college, etc., to sell pornography for commercial gain, while prosecuting a commercial establishment next door for the same activity.
We therefore find La.R.S. 14:106 D unconstitutional, insofar as it permits such a result.
Nevertheless, this constitutional infirmity does not, as suggested by the defendants, infect the entire statute. Instead, the enactment must be interpreted in such a way as to comport with the constitution, and we find that severing section D, insofar as it is unconstitutional, achieves this goal.
*233 Section 2 of Act 274 of 1974[13] expressly declares that the interpreter of the legislation shall not hold invalid those sections of the act which can be given effect without the invalid provisions.
In State v. Johnson, 343 So.2d 705 (La. 1977), we held another section of this statute (R.S. 14:106 C) to be unconstitutional in part, but we severed the defective language and upheld the rest of the statute. As we reiterated in Johnson, 343 So.2d 708: "* * * the valid portion of an enactment must be independent of the invalid portion . . . The law enforced after separation [of the invalid portion], must be reasonable in light of the act as originally enforced. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed."
So tested, we find La.R.S. 14:106 D(1974), herewith declared unconstitutional, is severable from the remainder of the statute, which therefore need not be invalidated as a whole. Especially in view of the severability clause, the severed portion is not so interrelated and connected with the other portions of the statute as to raise the presumption that the legislature would not have enacted the statute without the remainder hereby invalidated. Guidry v. Roberts, 335 So.2d 438, 447-48 (La.1976).

Decree
Treating this appeal as an application for supervisory writs, we grant the application. See Footnote 4, above. For the reasons assigned, we find the assignments of error without merit. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
SUMMERS, J., concurs in the result and will assign reasons.
DIXON, J., dissents with reasons.

APPENDIX 1
La.R.S. 14:106 F (1974):
(1) Except for those motion pictures, printed materials and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, close-up depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts, no person, firm or corporation shall be arrested, charged or indicted for any violation of a provision of this section until such time as the material involved has first been the subject of an adversary hearing under the provisions of this section, wherein such person, firm or corporation is made a defendant and, after such material is declared by the court to be obscene, such person, firm or corporation continues to engage in the conduct prohibited by this section. The sole issue at the hearing shall be whether the material is obscene.
(2) The hearing shall be held before the district court having jurisdiction over the proceedings within seventy-two hours after receipt of notice by the person, firm or corporation. The person, firm or corporation shall be given notice of the hearing by registered mail or by personal service on the owner, manager or other person having a financial interest in the material; provided, if there is no such person on the premises, then notice may be given by personal service on any employee of the person, firm or corporation on such premises. The notice shall state the nature of the violation, the date, place and time of the hearing, and the right to present and cross examine witnesses.
(3) The state or any defendant may appeal from a judgment. Such appeal shall not stay the judgment. Any defendant engaging in conduct prohibited by this section subsequent to notice of the judgment, finding the material to be obscene, shall be subject to criminal prosecution *234 notwithstanding the appeal from the judgment.
(4) No determination by the district court pursuant to this section shall be of any force and effect outside the judicial district in which made; and no such determination shall be res judicata in any proceeding in any other judicial district. In addition, evidence of any hearing held pursuant to this section shall not be competent or admissible in any criminal action for the violation of any other section of this title; provided, however, that in any criminal action, charging the violation of any other section of this title, against any person, firm or corporation that was a defendant in such hearing, involving the same material declared to be obscene under the provisions of this section, then evidence of such hearing shall be competent and admissible as bearing on the issue of scienter only.

APPENDIX 2
La.R.S. 14:106 A(2), (3) (1974):
A. The crime of obscenity is the intentional: * * *
(2) Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political or scientific value.
Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals or an animal and a human being; or
(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva or female breast nipples; or
(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals or female breast nipples, or the condition of being fettered, bound or otherwise physically restrained, on the part of one so clothed; or
(d) Actual, simulated or animated, touching, caressing or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
(e) Actual, simulated or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured and marketed for such purpose.
(3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition or display of obscene material, or the preparation, manufacture, publication or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition or display.
Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest; and, (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above; and (c) the work or thing taken as a whole lacks serious literary, artistic, political or scientific value.
SUMMERS, Justice (concurring).
As I understand the majority opinion it means that "evidence of any hearing held *235 pursuant to this section" is inadmissible at the trial, even as to the issue of scienter. The matter is placed in doubt by saying "We do not interpret this provision as authorizing introduction of the trial court's preliminary obscenity determination in the trial before the jury on the merit-issue of innocence or guilt of a violation of La.R.S. 14:106." I believe, as the statute declares, that evidence of the hearing is admissible "on the issue of scienter only."
Nor do I construe Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), to mean that this Court, contrary to Louisiana's Constitution, should review the fact question of obscenity. Only the law can be reviewed by this Court. Our jurisdiction is limited by the State's Constitution to questions of law. La.Const. art. V, § 5(C). While decisions of the Supreme Court of the United States may find that our Constitution does not comply with the Federal Constitution, that Court cannot confer jurisdiction on this Court where it is denied by our constitution.
For the foregoing reasons I must concur.
DIXON, Justice (dissenting).
I respectfully dissent.
Once again the court avoids the issue, and refuses even to discuss defendants' Assignment No. 4. We avoided the issue in State v. Amato, 343 So.2d 698 (La.1977).
State v. Amato held that R.S. 14:106 met federal constitution standards in providing that the trier of fact determines what "contemporary community standards" are. But the opinion did not touch the complaint articulated in the dissent. Under Louisiana constitutional criminal law, it is impossible, as the State Constitution has been interpreted to this point, to delegate to the various judges and juries in the various judicial districts the power to measure the conduct of the accused against an undefined and unknown "contemporary community standard," and then, and not until then, inform the accused that what he has done violates the law.
The question is not whether the scheme passes muster under the federal constitution as interpreted by the United States Supreme Court. It does. But the district attorney did not brief the point, Amato did not touch the point, and the court now ignores the point that the federal scheme violates the Louisiana Constitution provision that the statute must inform the accused that certain conduct is criminal.
It may be that the majority in Amato understood (but did not say) that the federal standards required such innovative legal machinery to present a legislative definition of obscenity which makes criminal that which is acceptable in certain communities. Although this is a novel proposition, it would explain the refusal of this court to address the issue raised in Assignment No. 4.
The defendants and the State deserve an explanation.
NOTES
[1] Subsequent to his appeal, the defendant Luck died. The state correctly suggests that, as to him, the proceeding (a preliminary to possible criminal prosecution) has abated. State v. Morris, 328 So.2d 65 (La. 1977).
[2] La.R.S. 14:106 A (1974) was re-enacted by Act 717 of 1977, with one insignificant change of verbiage (an "or" substituted for an "and" in 106A(2)(e)).
[3] This provision was re-enacted without change by Act 717 of 1977.
[4] Although the defendants appealed, we will treat this proceeding as an application for supervisory writs. Rules of Supreme Court of Louisiana, Rule 1, Section 11 (1975). To afford the right of both parties to apply for rehearing, see Rule 9, Section 6, the writ will be and is herewith granted.
[5] La.R.S. 14:106 D: "The provisions of this section [La.R.S. 14:106] do not apply to recognized and established schools, churches, museums, medical clinics, hospitals, physicians, public libraries, governmental agencies, quasi-governmental sponsored organizations and persons acting in their capacity as employees or agents of such organization.

"For the purpose of this paragraph, the following words and terms shall have the respective meanings defined as follows:
(1) Recognized and established schools means schools having a full time faculty and pupils, gathered together for instruction in a diversified curriculum.
(2) Churches means any church, affiliated with a national or regional denomination.
(3) Physicians means any licensed physician or psychiatrist.
(4) Medical clinics and hospitals mean any clinic or hospital of licensed physicians or psychiatrists used for the reception and care of the sick, wounded or infirm."
[6] Act 717 of 1977 re-enacted La.R.S. 14:106. The sections discussed in this opinion were re-enacted without change (except for the substitution of an "or" for an "and" in the last phrase of 106 A(2)(e) and the addition of a clarifying phrase to 106 A(6)). The only substantive changes appear to be: (a) the deletion of the concluding clause ("unless there is no person," etc.) from 106 C, in apparent compliance with the decision of this court invalidating such clause in State v. Johnson, 343 So.2d 705 (La.1977); (b) the increase of the permissible penalty in 106 G, to provide for imprisonment "with or without hard labor" for violations punished by the first paragraph thereof; and (c) the addition of 106 I, providing for defendants, notices, and service in the event a corporation is charged with violating the statute.
[7] La.R.S. 14:106 A(1): "Exposure of the genitals, pubic hair, anus, vulva or female breast nipples in any location or place open to the view of the public or the people at large such as a street, highway, neutral ground, sidewalk, park, beach, river bank or other place or location viewable therefrom with the intent of arousing sexual desire."

The specification of the particular parts of the body replaces the prior language which prohibited exposure "of one's person." This more general rendering had been used in Louisiana obscenity statutes from 1942 until Act 274 of 1974. The 1974 amendment failed to specify that the exposure must be of one's own organs, but in context no legislative intent is manifested to broaden the scope of the prohibited conduct beyond exposure "of one's own person."
[8] La.R.S. 14:106 A(2) reads in part: "Hardcore sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:

(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals or an animal and a human being; or
(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva or female breast nipples; or
(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals or female breast nipples, or the condition of being fettered, bound or otherwise physically restrained, on the part of one so clothed; or
(d) Actual, simulated or animated, touching, caressing or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
(e) Actual, simulated or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured and marketed for such purpose."
[9] La.R.S. 14:106 A(3) reads in part: "Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest; and, (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above; and (c) the work or thing taken as a whole lacks serious literary, artistic, political or scientific value."

This language tracks the guidelines set out by the Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
[10] La.R.S. 14:106 A(2): "Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political or scientific value. * * *"

However, see Footnote 8, "hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain" of certain explicitly specified sexual activity. (Italics ours.)
[11] La.R.S. 14:106 A(3): "Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition or display of obscene material, or the preparation, manufacture, publication or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition or display. * * *"
[12] The remaining three subsections of 106 A are not at issue in the instant case.
[13] Act 274 of 1974, Section 2: "If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."