483 So.2d 1264 (1986)
STATE of Louisiana
v.
LOUISIANA TOY CO., INC. and James M. Parris.
No. KA-2903.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1986.
Writ Denied May 16, 1986.
*1265 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Timothy M. Warner, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State.
Ronald J. Rakosky, New Orleans, John H. Weston, Brown, Weston & Sarno, Beverly Hills, Cal., for defendants-appellants, Louisiana Toy Co., Inc. and James M. Parris.
Before CIACCIO, WARD and WILLIAMS, JJ.
WARD, Judge.
James M. Parris and Louisiana Toy Company appeal their convictions of the crime of obscenity by challenging the constitutionality of Louisiana's obscenity statute, La.R.S. 14:106. Parris and Louisiana Toy Company, of which he is president, were charged in a series of six cases with a total of 20 counts of distributing obscene films and video tapes in violation of La.R.S. 14:106(A)(3). Parris and the corporation both filed motions to quash their respective bills of information on a number of constitutional grounds. After a hearing, the Trial Court denied the motions. Both appellants then entered guilty pleas pursuant to State v. Crosby, 338 So.2d 584 (La.1976), and North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), reserving their right to reassert their constitutional challenges in this Court.
Appellants first contend that the statute unconstitutionally discriminates between classes of individuals who disseminate materials presumptively protected by the free speech provisions of the United States and the Louisiana Constitutions. The portion of the obscenity statute challenged by this contention is La.R.S. 14:106 F(1):
Except for those motion pictures, printed materials, and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, closeup depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts, no person, firm, or corporation shall be arrested, charged, or indicted for any violations of a provision of this Section until such time as the material involved has first been the subject of an adversary hearing under the provisions of this Section, wherein such person, firm or corporation is made a defendant and, after such material is declared by the court to be obscene, such person, firm, or corporation continues to engage in the conduct prohibited by this Section. The sole issue at the hearing shall be whether the material is obscene.
This subsection was added to the obscenity statute in its 1974 re-enactment in an attempt to protect against unwarranted prosecution for dissemination of materials arguably protected by the First Amendment. The hearing provision of Subsection F amplified and replaced the procedure which had been established by the Supreme Court in State v. Eros Cinema, Inc., 262 La. 706, 719-20, 264 So.2d 615, 620 (1972). The new procedure provided pre-arrest adversary hearingsbut only for purveyors of material that does not contain the explicit depictions described by the statute. Sellers who are entitled to a hearing may be prosecuted only if they persist in the prohibited conduct after the court declares their materials obscene. In contrast, sellers of materials which contain the described sexual depictions may be prosecuted without a hearing to determine whether the materials are obscene. Appellants, whose films and video tapes meet the requirement for prosecution without a hearing, claim that this disparate treatment *1266 violates their right to equal protection of the law in the exercise of their First Amendment rights.
Our Supreme Court has approved the use of the adversary hearing procedure of Subsection F and has reviewed findings of those hearings. See, for example, State v. Walden Book Co., 386 So.2d 342 (La.1980). The provisions of Subsection F have withstood a constitutional attack on the grounds of vagueness. State v. Luck, 353 So.2d 225, 228 (La.1977). No appellate court of this state, however, has decided whether the procedure unconstitutionally denies equal protection of the law, although the issue was presented to the Federal District Court in Pollitt v. Connick, 596 F.Supp. 261 (E.D.La.1984). That Court held Subsection F constitutional.
In this case, Appellants urge that because the classification impairs their freedom of expression, we should subject it to strict scrutiny in our determination of whether it violates equal protection. We disagree. Statutes which attempt to suppress obscenity do not suppress speech or expression protected by the First Amendment. Stated otherwise, obscenity is not a form of expression protected by the First Amendment. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); State v. Amato, 343 So.2d 698 (La.1977). Therefore, the constitutionality of obscenity statutes, like other statutes that do not impinge upon First Amendment rights, is presumed. Obscenity statutes are subjected to a test which inquires merely whether they are a rational means of achieving a legitimate governmental purpose. See State v. Luck, 353 So.2d 225, 232 (La.1977).
Like the Federal District Court in Pollitt v. Connick, we find that the Legislature provided for differing treatment under R.S. 14:106 F to achieve legitimate governmental purposes:
The exception created in paragraph F(1) enables the authorities to take immediate legal action against purveyors of material that the legislature has determined is blatantly and presumptively obscene, without the delays inherent in a prearrest adversarial hearing, thereby minimizing public harm. Simultaneously, paragraph F(1) helps to protect the first amendment rights of purveyors of material that is not blatantly and presumptively obscene, that may arguably fall within the gray area straddling the border between the obscene and the not obscene, and that may arguably not even be obscene at all.
596 F.Supp. at 267-68.
Although we are not bound by the Federal District Court's analysis nor by its decision, we agree with it and also find that Subsection F represents a reasonable means of protecting the public from obscene materials while at the same time safeguarding constitutionally protected expression by removing the chill of potential criminal prosecution. Moreover, because a pre-arrest adversary hearing is not constitutionally required, State v. Walters, 440 So.2d 115, 119 (La.1983), and because states have broad powers to regulate obscenity, the Legislature was free to achieve its purposes by any rational procedures, including exceptions to the hearing provision.
Appellants argue that the statute is irrational because it in effect "draws the line in the wrong place," there being no guarantee that materials of the explicitness described by the statute are obscene as a matter of fact or law. We are not called upon, however, to determine whether the Legislature's line-drawing was correct, but merely whether it was rational.
In challenging the Legislature's categorization of materials, and hence potential defendants, Appellants have lost sight of the fact that Subsection F is but a part of the obscenity statute which, as a whole, defines obscenity under the United States Supreme Court test of Miller v. California. It is not merely the dissemination of portrayals of "actual ultimate sexual acts" with "explicit, close-up depiction of human genital organs" which *1267 deprives a defendant of a pre-arrest hearing. More is required. There must be probable cause to believe the material is obscene in the first place. Hence, before a person may be arrested for obscenity, that person must be purveying material which, under R.S. 14:106 A(3), the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and depicts or describes in a patently offensive way, specifically defined hard core sexual conduct, and taken as a whole lacks serious literary, artistic, political, or scientific value. Then if, and only if, the materials depict the described explicitness of Subsection F are purveyors subject to arrest without benefit of a prior hearing. Hence, only those dealers in what our Supreme Court has called "the most obvious pornography" are deprived of a hearing. State v. Walters, 440 So.2d at 119. We hold, therefore, that the Legislature's exception to the provision of a pre-arrest adversary hearing is rational and that it does not violate the constitutional right to equal protection of the laws.
Appellants next contend that the exemption from prosecution set forth in La. R.S. 14:106 D on its face violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. R.S. 14:106 D(1) states:
The provisions of this Section do not apply to recognized and established schools, churches, museums, medical clinics, hospitals, physicians, public libraries, governmental agencies, quasi-governmental sponsored organizations and persons acting in their capacity as employees or agents of such organizations, or a person solely employed to operate a movie projector in a duly licensed theatre.
In State v. Luck, 353 So.2d 225 (La.1977), the Louisiana Supreme Court held R.S. 14:106D unconstitutional as a violation of equal protection. The Court concluded however that the provision could be severed from the statute as a whole and thereby upheld the constitutionality of the obscenity statute. Despite the Luck decision, however, the Louisiana Legislature re-enacted the obscenity statute in 1983 without amending Subsection D and even expanded the exemption by adding movie projectionists to the list. Moreover, the Legislature omitted from the amendment the separability clause which had saved the statute's constitutionality in the Luck case. 353 So.2d at 233.
The Legislature's determined efforts to provide exemptions from prosecution for obscenity, notwithstanding their unconstitutionality, has undercut the rationale of Luck that Subsection D was severable because the unconstitutional portion was not such an integral part of R.S. 14:106 that the Legislature would not have enacted the statute without it. State v. Johnson, 343 So.2d 705, 708 (La.1977). By declining the opportunity to re-enact La.R.S. 14:106 without the unconstitutional exemptions, the Legislature has refuted the assumption of Luck and placed us in the difficult position of attempting to save the constitutionality of the statute as a whole while rejecting the implied message that the unconstitutional portion is an integral part.
We nonetheless find that the dominant purpose of the obscenity statute is not defeated by the invalidity of Subsection D. The constitutional portion of the statute is separately enforceable because, just as before its 1983 re-enactment, it is independent from the unconstitutional subsection, forming a complete act within itself and susceptible of reasonable construction without the exemptions of Subsection D. 2 Sutherland, Statutes and Statutory Construction, Sec. 44.04 (Sands 4th ed. 1973). We therefore reject Appellants' second argument.
Appellants next contend that La. R.S. 14:106 A(3) is void for vagueness on constitutional grounds because it does not give adequate notice of what is or is not "obscene" and does not provide sufficiently specific guidelines for law enforcement officials. Hence, Appellants argue the statute does not prevent its use as a tool of arbitrary, ad hoc, and discriminatory enforcement. Appellants contend that the majority opinion in Miller v. California, the source of Louisiana's definition of obscenity, *1268 focused on only one aspect of the constitutional doctrine of void-for-vagueness, that of failure to adequately inform of what conduct is forbidden. They argue that the Miller definition and R.S. 14:106 A(3) were not formulated in light of the requirement emphasized by recent decisions including Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), that a statute must provide specific guidelines for law enforcement officials.
Louisiana's obscenity statute, like that of many other states, incorporates the precise language of Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 2615, 37 L.Ed.2d 419 (1973), in setting guidelines to be applied in the determination of obscenity. Aside from their unimpeachable source, the guidelines have withstood many constitutional attacks on the grounds of vagueness. See, for example, State v. Amato, 343 So.2d 698 (La.1977) and State v. Davis, 457 So.2d 91 (La.App. 4th Cir.1984), writ denied 462 So.2d 206 (La.1985).
We do not believe that Kolender announces a new rule which would require a reappraisal of the constitutionality of La. R.S. 14:106. Although different Supreme Court decisions naturally emphasize different aspects of the void-for-vagueness doctrine, the doctrine has long required that laws contain explicit standards for the officials who apply them. In the same year that the Supreme Court enunciated the Miller obscenity standard, it decided Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), rejecting a constitutional challenge to an anti-noise ordinance on the grounds of vagueness. The Court noted eleven of its decisions, dating back to 1937, which held that explicit guidelines for enforcement officials are necessary to prevent arbitrary and discriminatory enforcement of laws. 408 U.S. at 108 n. 4, 92 S.Ct. at 2299 n. 4. We must assume that the United State Supreme Court decided Miller confident that those standards give explicit guidelines for officials to apply them in deciding whether material is obscene or not. Hence, we decline to now hold that Kolender overrules Miller by implication.
As a corollary of the void-for-vagueness argument, Appellants assert that standards of acceptability of sexually explicit materials have so evolved in the twelve years since Miller that as a result, materials of a "hardcore" nature are no longer necessarily legally "obscene"rendering all obscenity cases marginal and the "intermittent and occasional" prosecutions essentially arbitrary. We do not agree. The Miller formulation is an evolving standard. By applying "contemporary community standards" in the determination of obscenity, La.R.S. 14:106 insures that law enforcement officials are not bound by static, out-dated guidelines. Moreover, that prosecutions for obscenity might be rare or even erratic does not mean they are arbitrary or discriminatory. Appellants have not shown that enforcement of the obscenity statute is in fact infrequent, nor have they shown that targets of prosecution are selected based upon any alleged vagary of the statute. Lacking both of these showings, we cannot say that the statute unconstitutionally invites arbitrary enforcement. We therefore reject this argument.
Appellants' final argument contends that the statute is facially overbroad because it could prohibit the dissemination of erotic materials which are protected by the First Amendment. This argument particularly claims that La.R.S. 14:106(A)(2)(b)(ii) and (iv), as well as other sections, can be applied to prohibit non-obscene, and hence protected, expression. In support of this contention, Appellants rely primarily upon Wild Cinemas of Little Rock, Inc. v. Bentley, 499 F.Supp. 655 (E.D.Ark.1980), in which an Arkansas obscenity statute similar to Louisiana's was declared unconstitutionally overbroad. We might find the Wild Cinemas case persuasive were it not for our Supreme Court's decision in State v. Amato, 343 So.2d 698 (La.1977), a case which Appellants neither cite nor distinguish. Amato held that the challenged provisions of the Louisiana statute are not overbroad. As in their equal protection argument discussed above, Appellants overlook the fact that the conduct specifically *1269 defined by R.S. 14:106(A)(2)(b) does not, standing alone, amount to obscenity. The specifically defined conduct must also meet the three-prong requirement of R.S. 14:106(A)(2)(a) in order to be found obscene. In this context, we find, as we are bound by Amato, that Louisiana's definition of obscenity is not overbroad.
For the foregoing reasons, we affirm the District Court's denial of the motions to quash Appellants' bills of information, and we affirm their convictions.
AFFIRMED.