BARHAM, Justice.
 

 We granted a writ on the'State’s application under bills of exceptions to the trial
 
 *709
 
 court’s sustaining of the defendant’s motions to suppress in these three cases. Although there are three prosecutions pending in the Criminal District Court for the Parish of Orleans, they are here consolidated, and the issues presented are resolved in the one opinion.
 

 These three prosecutions stem from the seizure of allegedly obscene motion pictures under a search warrant of April 23, 1971 (“Zodiaction” and “Shorts”), another search warrant of the same date (“Studs Galore”), and a search warrant of April 27, 1971 (“Four Women in Trouble” and two unnamed short films). The same procedure for obtaining the search warrant was followed in each instance: A police officer viewed, on a particular date, the film later seized at LeBanque Cinema, Cinema One and Cinema Two, which was owned and operated by Eros Cinema, Inc. The officer, after viewing the film, made an application (affidavit) for search warrant, describing the place where the film was being shown and his activities in connection with the viewing of the film, and giving the name of the motion picture and numerous details of what was pictorially depicted. The affidavit is fully descriptive, reciting in detail the various sexual activities performed in the film. Each affidavit was taken before a judge of the Criminal District Court for the Parish of Orleans, who signed the warrant ordering the seizure of the “obscene films” described in the affidavit. Each return shows an inventory which is responsive to, and does not go beyond, the affidavit and the search warrant. Thereafter Eros Cinema, Inc., was charged in three separate bills of information with having committed the crime of obscenity “by the intentional exhibition of lewd, lascivious, filthy and sexually indecent motion picture film”. See R.S. 14:106, (A)(2).
 

 The defendant filed a motion to suppress in each case, alleging that the seizure of the films was unconstitutional under the First, Fourth, and Fourteenth Amendments for numerous reasons. The trial court with reasons for judgment sustained the motion to suppress in each case. The court concluded that a prior adversary hearing to determine obscenity was required before a seizure of the film could be made, and that the search warrants and the seizures thereunder violated the First and Fourteenth Amendments’ guarantee of freedom of speech.
 

 Under the application made to this court, the briefs fildd in support and in opposition, and the arguments made before this court, we are presented with a single legal issue, res nova for us: Is a prior adversary hearing required under the First, Fourth, and Fourteenth Amendments to the United States Constitution before a search warrant can issue for the seizure of
 
 *711
 
 a particular motion picture film alleged to be obscene ?
 
 [1]
 

 Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), reaffirmed that the guarantee of freedom of speech and of the press of the First Amendment (made applicable to the states through the Fourteenth Amendment) gives full protection to all ideas having even the slightest social significance “unless excludable because they encroach upon the limited area of more important interests”. The court held squarely, however, that obscenity is utterly without redeeming social importance and is therefore "not within the area of constitutionally protected speech or press”.
 

 In Kingsley Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), handed down on the same day as Roth, the Supreme Court, with Warren, C. J., and Douglas, Black, and Brennan, JJ., dissenting, upheld the validity of a New York statute which allowed the ex parte enjoining of display and sale of obscene literature. The basis of the holding was that the statute allowed “a trial of the issues within one day after joinder of issue and a decision * * * within two days of the conclusion of the trial”, and that the seizure was therefore not violative of due process in screening for obscenity as an exception to the First Amendment right of freedom of expression.
 

 In Marcus v. Property Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the court without dissent declared unconstitutional a Missouri procedure authorizing the search for and seizure of allegedly obscene publications preliminary to their destruction if found after a hearing to be obscene. Under warrants issued pursuant to the Missouri statute, 11,000 copies of 280 publications were seized at six different places. The court posed the question of whether the Missouri use of search and seizure under the circumstances of that case involved “abuses inimical to protected expression”. The court said : “ * * * Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer’s belief, or otherwise to argue against the propriety of the seizure to the issuing judge, still the warrants issued on the strength of the
 
 conclusory assertions of a single police
 
 officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene. * * * ” (Emphasis here and elsewhere has been supplied.) The court found the warrants deficient also in giving total discretion to the executing officers who made an on-the-scene determination of what con
 
 *713
 
 stituted obscene publications. It finally said: “Mass seizure in the fashion of this case was thus effected without any safeguards to protect legitimate expression.” It particularly distinguished Kingsley Books, supra. The decision does not turn upon the lack of a hearing before execution of the warrants, for that question was pretermitted.
 

 In A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), the court held that the seizure of 1715 books constituting all of the copies of 31 novels in a warrant for the seizure of all “Nightstand Books” as obscene was unconstitutional where there was no adversary determination of the books’ obscenity before the mass seizure. This majority decision was subscribed to by only four members of the court. Justices Black and Douglas concurred, reiterating their views in Roth, supra, never reaching the procedural aspects of the case, and simply concluding that obscenity in speech or publication is protected under the First Amendment. Justice Stewart concurred on the ground that the books were not pornographic. Justices Harlan and Clark dissented.
 

 Again specifically discoursing on the teaching of Kingsley Books v. Brown, supra, and apparently reaffirming its holding, the majority in A Quantity of Books said: “It is our view that since the warrant here authorized the sheriff to seize
 
 all copies of the specified titles,
 
 and since PK was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient.” The court further stated:
 
 “
 
 * * * A seizure of
 
 aU copies
 
 of the named titles is indeed more repressive than an injunction preventing further sale of the books.” Finally the court said: “Nor is the order under review saved because,
 
 after aU 1,715 copies were seised and removed from circulation,
 
 P-K News Service was afforded a full hearing on the question of the obscenity of the novels.”
 

 This opinion of four members of the Supreme Court, two of whom no longer sit, is authority only for the proposition that
 
 total suppression
 
 of any expression of speech or press as obscenity cannot be had except after an adversary hearing. The repeated mention of the mass seizure of
 
 all
 
 copies of all titles clearly points to the alternative the majority felt was available in the control of obscenity — that is, the seizure of one copy of each title for evidence to determine whether all copies may be suppressed as obscene.
 

 It should be noted that in every case we have discussed the affidavit, the search, and the seizure were not made under general provisions for search and seizure for evidence in cases involving probable cause to believe that the crime of obscenity as defined by a special criminal statute has
 
 *715
 
 been committed. All
 
 the
 
 seizures considered were made under special provisions for suppressing, destroying, or enjoining obscenity. The warrant and the seizure were both preliminary steps in these cases to a total, final suppression of the things seized. In each case
 
 everything
 
 thought to be obscene was suppressed, was seized, or was enjoined ex parte.
 

 Since A Quantity of Books in 1964, the Supreme Court has not spoken on whether an adversary hearing is required before the seizure of allegedly obscene materials. However, in Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the court may have spoken strongly on the precise issue before us now by its very silence. In that case the court was concerned with the admissibility in evidence of motion pictures seized under a warrant issued by a justice of the peace “on the basis of an affidavit of a police officer which stated only the titles of the motion pictures and that
 
 the officer had determined
 
 from personal observation of them and of the billboard in front of the theatre
 
 that the films were obscene”.
 
 The seizure was held unconstitutional since the warrant was “issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered * * * obscene” (citing Marcus v. Property Search Warrant, supra). Noting that it was difficult for the magistrate issuing the warrant to personally review a
 
 motion
 
 picture, as compared with reading a book, in order to determine obscenity before ordering a seizure, the court said it need not decide this issue.
 

 It is important to note that the opinion in Lee Art Theatre turns solely upon whether the seizure was an unreasonable invasion of First Amendment rights and not upon whether the seizure was unreasonable in violation of Fourth Amendment rights. If the court in Lee Art Theatre had believed that an adversary hearing was a prerequisite to issuance of a warrant to search for and seize as evidence an allegedly obscene motion picture, it would never have reached the question of the validity of the affidavit supporting the warrant. Moreover, it is apparent that when the court pretermitted the question of whether the issuing magistrate should personally view the film before an cx parte seizure, the court must have believed a valid ex parte seizure could be had. It could not have believed that an adversary hearing was mandatory in every case, for in such a situation no affidavit however detailed, no advance review by the issuing magistrate however thorough, could ever validate a warrant issued ex parte. If we listen to the booming silence of the court in Lee Art, we can reach no other conclusion.
 

 The State and the defense have cited numerous federal and state cases on the question here presented. There is great diver
 
 *717
 
 sity in the holdings. We do not look to any of them for authority in reaching a holding here, but have read them only for enlightenment as to their interpretation and application of the United States Supreme Court pronouncements.
 
 [2]
 

 We hold that the seizure of a single copy of an allegedly obscene motion picture under a valid search warrant, based upon an affidavit making a factual statement for a determination of probable cause that the Louisiana obscenity statute has been violated, may be had without a prior adversary hearing. Indeed, to hold to the contrary would be ridiculous if in fact — and the United States Supreme Court has said so — obscenity is not protected by the First and Fourteenth Amendments. If obscenity is a crime, and it is, the best evidence of a necessary element of the crime is the allegedly obscene material. Unless such material can be purchased for use in evidence, the only lawful means in cases such as this for producing and preserving this evidence is under a search and seizure which comply with the Fourth Amendment requirements for a valid search warrant. If a person is in fact exhibiting an obscene film, notice to the exhibitor that he is required to appear in court for a hearing to determine whether the film might be seized as evidence affords him an opportunity to destroy the evidence of his crime. Moreover, any court process addressed to a prospective defendant compelling him to produce the evidence which would convict him of a crime would violate the Fifth Amendment right against self-incrimination. See Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); People v. De Renzy, 275 Cal.App.2d 380, 79 Cal.Rptr. 777 (1969).
 

 In recognizing that a prior adversary hearing is not required in cases such as these, we do not mean to' say that there is no relief available to those persons who have been subjected to seizures of allegedly obscene materials. Since often only one copy of a motion picture is immediately available and seizure of it takes away the exhibitor’s right of expression, there must be a procedure for immediate judicial review in an adversary proceeding. The decisions of the United States Supreme Court interpreting those First Amendment rights would require that the defendant be offered an immediate opportunity (within approximately 48 hours) to have an adversary hearing to determine whether the expression represented by the motion picture is protected under the First Amendment or whether it is in fact obscene so as to establish probable cause that the crime of obscenity has been committed and that the film must be retained as evidence. See Kingsley Books v. Brown, supra.
 

 
 *719
 
 This argument was not raised in brief by either the State or the defendant, but the State in argument recognized the necessity for such relief and contended that an immediate subsequent determination of the constitutional right was the relief to which the defendant was entitled as opposed to a hearing prior to seizure. The defendant admits in brief: “In the proceedings below, there is no question that judicially superintended adversary proceedings were available
 
 following
 
 the seizure.” This defendant, however, did not invoke such proceedings but chose to take the position that it must have a
 
 prior
 
 adversary hearing. It waited several months before moving for a post-seizure hearing, which was granted on its “motion to suppress” and which is the proceeding we review. It did not even ask for preferential fixing on our docket when the writ was granted, although we have given the cases preferential assignment.
 
 [3]
 

 Although defendant has admitted that it has no complaint of remedies for the post-seizure hearing, we feel that for the future we should make some specific pronouncements on the remedies to be provided by the courts under our general authority for establishing procedural guidelines in the absence of specific legislative procedural rules. See C.Cr.P. Art. 3, which provides: “Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.” See State v. Davidson, 248 La. 161, 177 So.2d 273
 
 (1965);
 
 State v. Rasheed, 248 La. 309, 178 So.2d 261 (1965); State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972).
 

 In response to a federal constitutional question and in light of the United States Supreme Court pronouncements on that issue, we here specifically set out a procedure, already available in our law, to be followed by the courts to assure proper constitutional safeguards in this area. In seizures of allegedly obscene material under search warrant based on a showing of probable cause for a belief that the crime of obscenity
 
 has
 
 been
 
 committed, the
 
 following procedures are available:
 

 (1) Evidence so seized shall be the subject of a motion to suppress and return which shall be heard within 48 hours after the motion is filed unless further delay is requested by the defendant, and judgment
 
 *721
 
 shall be rendered within 24 hours after the completion of the hearing.
 

 (2) The aggrieved party, whether the State or the defendant, may apply to this court for supervisory writs which we shall consider as remedial writs. Cf. C.Cr.P. Art. 703, Comment (g).
 

 (3) If a hearing is required in this court, it shall be given preference on our docket.
 

 For the reasons herein assigned the judgments of the trial court in all three prosecutions sustaining the defendant’s motion to suppress are reversed, and the cases are remanded to the trial court for further proceedings.
 

 [1]
 

 . In State v. Bazzell, 255 La. 275, 230 So.2d 586 (1970), where the trial court had sustained a motion to suppress, we refused writs because the search warrant was defective, not because we were in agreement with the district court’s determination that a prior adversary hearing was required.
 

 [2]
 

 . The best and clearest expression is that by Judge E. Gordon West in Bazzell v. Gibbens, 306 E.Supp. 1057 (E.D.La.1969).
 

 [3]
 

 . Speedy review by this court was available as we always stand ready to review any application which invokes our supervisory jurisdiction; and those which require immediate action are treated as “remedial” writs and are considered and acted upon with whatever speed is neeessary under the circumstances. In a similar situation involving the seizure of obscene materials we acted with great speed in order that illegally seized evidence could be returned to the defendant. See State v. Bazzell, 255 La. 275, 230 So.2d 586 (1970).