279 So.2d 172 (1973)
STATE of Louisiana, Respondent,
v.
Edna Mae NEAL, Relator.
No. 53065.
Supreme Court of Louisiana.
June 11, 1973.
*173 Jack Peebles, Metairie, for relator.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., for respondent.
TATE, Justice.
The defendant is charged with selling obscene materials and with possessing such materials with intent to sell them. La.R.S. 14:106. We granted certiorari to review the trial court's denial of a motion to suppress publication, allegedly seized under a constitutionally deficient search warrant. 271 So.2d 531 (La.1973).
The primary issue is whether the search warrant is defective under the holdings of this court in State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972) and of the United States Supreme Court in A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) and Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). The contention made is that, under these decisions, the present search warrant was process violative of the rights of freedom of speech and of the press guaranteed to the defendant by the First and Fourteenth Amendments to the United States Constitution, because it authorized the law officers to seize any and all publications in the defendant's premises which, in the unlimited discretion of the officers, were opined by them to be obscene.
The search warrant was issued "To the sheriff's office, city police, or any other peace officer." It authorized the officers named to search the defendant's business premises and to seize: "Lewd, lascivious, filthy, and obsence books, magazines, pamphlets, pictures and films."
*174 Acting under authority of the warrant, the two deputy sheriffs searched the defendant's premises and seized:
a. 1,492 copies of 403 different books and magazines;
b. 31 reels of movie film;
c. 270 novelty items, including lipstick, rubber novelties, 40 battery operated vibrators, etc.
The trial court denied the defendant's motion to suppress this seizure as unconstitutional and illegal, and to return the items seized. We granted certiorari to review this denial.
The present blanket search warrant authorized seizure of all publications on the premises felt, in the sole discretion of the seizing officer, to be obscene. As held in Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the warrant thus issued is process violative of our constitutional protection of freedom of the press and of speech.
In the cited Marcus decision, the United States Supreme Court reversed a trial court denial of a motion to suppress and return publications seized as obscene under a similar search warrant. The court pointed out the danger of suppression of constitutionally protected publications through such a general search warrant, as well as the long history of the misuse of such warrants to suppress publications merely objectionable to particular governmental officers, although not necessarily unlawful which led to the adoption of constitutional guarantees here held to be violated.
The Supreme Court specifically found the warrant defective, because, 367 U.S. 732, 81 S.Ct. 1716: "The warrants gave the broadest discretion to the executing officers; they merely repeated the language of the statute and the complaints, specified no publications, and left to the individual judgment of each of the many police officers involved the selection of such magazines as in his view constituted `obscenc * * * publications.'" The court concluded that "Mass seizure in the fashion of this case was thus effected without any safeguards to protect legitimate expression". 367 U.S. 738, 81 S.Ct. 1719.
The court held that the unconstitutional seizure under a general warrant "infected the proceedings" and required that the trial court judgment be reversed. 367 U.S. 738, 81 S.Ct. 1708. The trial court had denied a motion to suppress and return insofar as 100 of the 280 items seized which, at the hearing on the motion, were held to be obscene.[1]
It is important to note that the Supreme Court did not question the correctness of the state court's holding that the publications seized were in fact obscene. The court nevertheless annulled their seizure. By its holding, the unconstitutional invalidity of the blanket search warrant made the search and seizure one violative of the free-press constitutional rights of the defendant and of the public, which could be vindicated only by suppression and return of all publications unconstitutionally seized, whether in fact obscene or not. 367 U.S. 737, 81 S.Ct. 1708.
We should further note that in the present case the ex parte seizure of all copies of publications thought by the officers to be obscene, and the authorization of the warrant for them to do so, likewise offended constitutional guarantees of freedom of the press and of speech. State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972); A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).
In the last cited case, the United States Supreme Court likewise set aside a mass *175 seizure of books, without reaching the contention whether the novels were in fact obscene, because of the constitutional deficiency of the seizure. The court held the seizure unconstitutional "since the warrant here authorized the sheriff to seize all copies of the specified titles, and since P-K [the defendant] was not afforded a hearing on the question of the obscenity" before the warrant issued authorizing seizure (i.e., suppression) of all copies of the publications. 378 U.S. 210, 84 S.Ct. 1725. The court held that the adversary hearing, after seizure, did not cure the constitutional invalidity of such a seizure, creating "danger of the abridgment of the right of the public in a free society of unobstructed circulation of nonobscene books." 378 U. S. 213, 84 S.Ct. 1727.
The state argues that the two cited decisions of the United States Supreme Court controlling the present issue are distinguishable. The state's argument is based upon the circumstance that both of the decisions arose under statutes authorizing the seizure and destruction of obscene publications. The state argues that therefore the rulings are not applicable to criminal proceedings.
However, in each instance, the Supreme Court held the seizure constitutionally invalid, and it did not reach the merits of the condemnation statutes nor of the obscenity of the seized publications. The decisions flatly hold that a blanket seizure of all publications, or one made upon the unilateral determination of obscenity by the seizing officer, is so constitutionally deficient as to invalidate totally the seizure. No authority is cited in support of the state's contention that the First Amendment invalidates unconstitutional seizures in one type of proceeding and not in criminal proceedings; and we could find none.
In short, the decisions cited hold that, while under limiting conditions a search warrant may be used to secure evidence in an area potentially within the reach of the First Amendment, nevertheless blanket or general search warrants shall not be used as a method of ex parte censorship by seizing all copies of all publications felt by some members of the public to be obscene. The decisions further hold that, in this sensitive area, seizures may be made only upon the constitutionally informed determination of a magistrate, rather than at the whim of a seizing police officer. Otherwise, a bookstore could be effectively closed, and publications effectively suppressed although entitled to the protection of our constitutional guarantees, without and while awaiting a judicial determination whether the publications seized were in fact "obscene".
In the present case, for instance (and we do not doubt the conscientious good intentions of the seizing officers), they did not view the contents of any of the film seized, nor did they read or look at the contents of the fifty books seized, instead relying upon the titles of the books for their on-the-spot determination of obscenity. Approximately 200 of the magazines seized were nudist magazines not containing any depiction of sexual contact or acts. Included in the general haul was one automotive parts catalog.
As to the non-publication novelty items (generally described above in subheading c of the items seized), the seizure must also be invalidated. Although these do not fall within the protection of the First Amendment as do (at least arguably) the publications and films seized, the seizure of the novelty items exceeded the scope of the search warrant, which was restricted to publications and films.
For the reasons assigned, therefore, we reverse the judgment of the trial court which denied the defendant's motion to suppress and return the publications and items unconstitutionally or illegally seized. We remand this case for further proceedings consistent with the views here expressed.
Reversed and remanded.
NOTES
[1] The court noted that the 180 items found non-obscene had nevertheless been withheld from public circulation for the two months during which a judicial determination to this effect was being held.