MARCUS, Justice.
B.G.N.O., Incorporated, doing business as Sinerama Theater, Raymond Pugh, Buddy Levy and Richard Brandt were charged in the same information with two counts of obscenity in violation of La.R.S. 14:106. B.G.N.O., Incorporated filed a motion to suppress physical evidence. After a hearing, the trial judge granted defendant’s motion to suppress. We granted the state’s application under our supervisory jurisdiction to review the correctness of this ruling.[1]
The state contends the trial judge erred in granting defendant’s motion to suppress physical evidence. It argues that the seizures of the evidence were valid in that they were made pursuant to search warrants issued on probable cause established by affidavits of credible persons reciting facts establishing the cause for issuance of the warrants.
The record reflects that on January 18, 1978, Officers Wayne Jusselin and John Auster purchased admission tickets at the Sinerama Theater, located at 3615 Tulane Avenue in New Orleans, and viewed in its entirety the film entitled “The Penthouse Party.” After viewing the film, the officers prepared an affidavit in support of a search warrant. The affidavit is fully descriptive, detailing chronologically in about three pages the hard-core sexual conduct portrayed in numerous scenes of the movie. In conclusion, the affidavit states that “[tjhroughout this entire motion picture, oral, genital contact, penetration of the penis into the vagina, penetration of the tongue into the vagina, masturbation, ejaculation, exhibition of the genitals and pubic hairs as well as the breast and nipples *778 are clearly visible.” [2] Similarly, on January 25, 1978, Officers William Derbyshire and Herbert Lund purchased admission tickets at the same theater and viewed in its entirety another film entitled “The Freak Sisters.” After viewing the film, the officers prepared a two-page affidavit describing in detail the hard-core conduct portrayed in numerous scenes of the movie and concluding with the same statement quoted above in connection with the other affidavit.[3] Based on these affidavits, a magistrate issued two warrants authorizing the search for and seizure of the two films, mechanisms used to display the films, and records reflecting ownership and employees of the business as well as receipt of the motion pictures. The search warrants were duly executed at the theater and the property described was seized pursuant to said warrants. Subsequently, a bill of information was filed as aforesaid.
Prior to the suppression hearing, defendant requested the court to view the films in question. After viewing the films and at the conclusion of the suppression hearing, the trial judge granted defendant’s motion to suppress the evidence seized. In his reasons for judgment, the trial judge found that “the affidavits taken by themselves contained more than sufficient information for the magistrate to make a determination of probable cause.” However, he found additionally that there were omissions in the affidavits of musical background, dialogue and non-sexual scenes which, although neither intentional nor material, prevented the magistrate from examining the works as a whole to determine if they were obscene.
La.R.S. 14:106 provides in pertinent part:
A. The crime of obscenity is the intentional:

(2) Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship, or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political, or scientific value.
Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals, or an animal and a human being; or
(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or
(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
(d) Actual, simulated, or animated, touching, caressing, or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
(e) Actual, simulated or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose.
La.Code Crim.P. art. 162 provides in pertinent part:
*779 A search warrant may issue only upon probable cause established to the satisfaction of the judge by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant’s knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. State v. Richards, 357 So.2d 1128 (La.1978) and cases cited therein. However, a seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material. Zurcher v. Stanford Daily, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). The seizure of instruments of a crime, such as a pistol or a knife, or contraband or stolen goods or objects dangerous in themselves, is to be distinguished from the seizure of quantities of books and movie films when a court appraises the reasonableness of the seizure under the fourth or fourteenth amendment standards. Roaden v. Kentucky, supra. Where the materials sought to be seized may be protected by the first amendment, the requirements of the fourth amendment must be applied with “scrupulous exactitude.” Zurcher v. Stanford Daily, supra; Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). In such a case, the police must supply factual information in the application for the warrant sufficient to convince the magistrate that the materials to be seized are probably obscene. Con-clusionary allegations by the police officer who viewed the film that it is obscene will not suffice. Moreover, the police are restricted in the exercise of the warrant to specific materials that the magistrate has determined, based on the facts supplied to him, to be probably obscene. Parish of Jefferson v. Bayou Landing Ltd., Inc., 350 So.2d 158 (La.1977).
Where a seizure of an allegedly obscene motion picture is pursuant to a warrant for the purpose of preserving it as evidence in a criminal proceeding, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of an interested party, the seizure is constitutionally permissible. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972). In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned. Heller v. New York, supra.
In the instant case, the only issue is whether the affidavits' in support of the search warrants were sufficient to have permitted the seizures of the allegedly obscene films pursuant to said warrants for the purpose of preserving them as evidence in this criminal proceeding.
The affidavits prepared by the police officers who viewed the two films described in explicit detail numerous scenes of hard-core sexual conduct depicted in the films. Moreover, both affidavits contained a general statement to the effect that such hard-core sexual conduct was displayed throughout the films. Based on our review of the affidavits, we conclude that the police officers supplied factual information more than sufficient to have convinced the magistrate who issued the search warrants that the materials to be seized were probably obscene. Hence, the trial judge erred in granting defendant’s motion to suppress based on the insufficiency of the affidavits.
DECREE
For the reasons assigned, the ruling of the trial court granting the motion to sup *780 press is reversed and the case is remanded to the district court for further proceedings in accordance with law.
FIRST APPENDIX TO OPINION
On Wednesday, January 18, 1978 at approximately 10:55 AM, New Orleans Police Officers Wayne Jusselin and John Auster, both assigned to the Vice Crimes Section, entered the Sinerama Theater, located at 3815 Tulane Ave. The officers puchased (sic) an admission tickey (sic) from a white male cashier for $5.00 each. Officer Auster and Jusselin entered the viewing area and sat down. At approximately 11:03 AM, the film, entitled “The Penthouse Party” commenced. The movie started with an elderly white male, about 50 years, grey hair and a young white female about 25 years old in a bathroom. The white female is seated inside of a bathtub, apparently bathing as the white male enters the room. The white female summons the white male to the side of the tub, and pulls the white male into the tub, disrobing him inside of the bathtub. The white male stands up and the white female performs an act of fellation on him as she is kneelin (sic) infront of him. Penetration of the white males penis inside of the white females mouth is clearly visible. The white male and white female are seated in the bathtub facing each other. The whtie (sic) male masturbates the white female with soap and with his other hand he spreads the soap on the white females breasts. The white male and the whtie (sic) female get out of the tub and with the female leaning away for the male, they have intercourse from the rear. The white male withdraws his penis from the white female and ejaculates on her back. The white male bids the white female good-by and leaves the apartment.
The white female makes a phone call to a friend to come over to the apartment. The scene changes with the white female lying on the floor, clad in a bathrobe. The white female begins to massage her breast and shortly removes all of her clothing. The white female masturbates herself as she rubs her breast and moves her fingers from her vagina area to her mouth. The white female appears to reach a climax and places her fingers in her mouth, licks them and falls asleep. The white female is awaken by a knock on the door. At the door is a white male, # 2, about 30 years with a mustache. The white male kisses the white female and the couple move into a bedroom where they undress each other. The white male, # 2, begins kissing the white females breasts and shortly the white female and white male, # 2, kneel in the bed with the white female performing fellatio on the # 2 white male. The penis of # 2 is clearly visible in the mouth of the white female. The scene change with the white female, now identified as Linda, lying on her stomach and the white male # 2 having intercourse with her from the rear. The # 2 male appears to have a climax but no ejaculation is observed. The white female, Linda, gets out of bed and makes a phone call to friends but does not receive and (sic) answer. A schene change occurs and shows the friends she had just tried to call. It depicts a white female, # 3 and a white male, # 4, sitting in a bed. # 3 takes off her blouse and lies in the bed with # 4. The # 4 performs an act of cun-ninglus (sic) on the # 3 with penetration of the toungue (sic) clearly visible in the vagina. The show goes back to Linda, the first white female, as she is lying in bed with another white male, #5. #5 begins to suck Linda’s breasts and kissed her stomach and performs an act of cun-ninglus (sic) on Linda. Penetration of # 5 tongue inside of Linda’s vagina is clearly visible. Scenes change again to Linda's friends, # 3 and # 4. They are having intercourse from the rear. Scenes change four time in a period of about 40 seconds from Linda and # 5 to Linda’s friends. Penetration of oral-genital and sexual intercourse is clearly visible.
Scenes change and another female is at Linda’s front door. She is dressed in a yellow sweater and black mimi (sic) skirt *781 and is subject #6. #6 undresses and performs an act of fellatio on # 5 who is in bed with Linda. Positions change with the # 6 lying on her back with # 5 kneeling over her chest as she performs an act of fellatio on him. The white male # 5 slide down on the # 6 and places his penis between her breast, simulating intercourse. Kubda returns to the bedroom with # 5 and # 6. Linda watches as # 5 and # 6 have intercourse in the missionay (sic) position. The # 5 then has intercourse with Linda from the rear. Penetration of the # 5 penis into Linda’s vagina is clearly visible. # 5 removes his penis from Linda’s vagina and masturbates himself to ejaculation onto Linda’s back. Several scenes changes occur from Linda # 5 and # 6 to Linda’s friends, identified as Edie and Joe., who she previously called on the telephone. Edie and Joe are shown with Edie performing an act of fellatio on Joe. Penetration of Joe’s penis inside of Edie’s mouth is clearly visible. Positions change with Joe having intercourse with Edie in the missionary position and as he reaches his climax he withdraws his penis and ejaculates on Edie’s stomach. The scene goes back to Linda and # 5 and # 6 who are in bed. Linda gets out of bed, makes another phone call and invites another female over. The female, # 7, is wearing a black dress with a red bra and is Spanish in appearance. Linda and # 7 enter the bedroom and linda undresses the # 7. Linda begins to masturbate the # 7 and penetration of Linda’s fingers into the # 7 vagina is clearly visible. # 7 performs and (sic) act of cunninglus (sic) on Linda.
Linda received a phone call from Bill and an unknown w/f. Bill and the white female, # 8 comes to Lindas apartment and enters the bedroom, where Linda and # 7 are. Linda and Bill pair off and # 7 and # 8 pair off with several quick flashes sexual activity occuring. The camera zeros in on the doorknob of Linda’s apartment and shows the elderly white male, from the beginning of the movie entering the apartment holding a gold braclet (sic) in his hand. When the elderly white male sees linda, she sruggs (sic) her shoulders and the movie ends.
Throughout this entire motion picture oral, genital contact, penetration of the penis into the vagina, penetration of the tongue into the vagina, masturbation, ejaculation, exhibition of the genitals and pubic hair as well as the breasts and nipples are clearly visible.
For the above facts and reasons that a search warrant should be issued for the Sinerama Theatre located at 3615 Tulane ave. for the purpose of seizing the following described property: the currently featured film, entitled “The Penthouse Party,” mechanisms used for the display of such motion pictures, records reflecting ownership and employee of the business as well as records reflecting receipt of motion picture.
SECOND APPENDIX TO OPINION
On Wednesday, January 25, 1978, at about 12:25 p. m., New Orleans Police Officers William Derbyshire and Herbert Lund entered the Sinerama Theatre, located 3615 Tulane Avenue. The officers paid $5.00 each to a white female cashier and entered the viewing area. The movie began with the title “The Freak Sisters” flashed on the screen. The first scene showed two white females later identified as Bonnie and Yvonne, laying on a bed in the nude. A white female named Kerry enters the room gets onto the bed and masturbates both Bonnie and Yvonne. Kerry disrobes lies on her back on the bed. Yvonne performs an act of cunnilingus on Kerry, while Kerry performs an act of cunnilingus on Bonnie.
The next scene shows all three females sitting in the dining room. Yvonne and Bonnie decide to go shopping. The next scene shows them talking to a white male dressed in a white t-shirt and black pants. *782 Bonnie and Yvonne bring this white male home with them. Bonnie begins to car-ress (sic) his genital area through his clothing. The white male removes his pants and lays on the coffee table. Bonnie and Yvonne disrobe. The white male and Yvonne begin kissing. Bonnie then performs an act of fellatio on the white male. Penetration of the white male’s penis into Bonnie’s mouth is clearly visible. The male stands up and begins to masturbate himself while Bonnie is still performing fellatio on him. The male lays back down and masturbates himself and ejaculates onto Kerry’s stomach.
The scene change and shows Bonnie and Yvonne lying on the floor reading a newspaper. It appears that they are looking to meet new people. A Spanish couple comes into the scene. The Spanish couple and Kerry disrobe and lie on the floor. Kerry performs an act of fellatio on the Spanish male while the Spanish female performs an act of cunnilingus on Kerry. The Spanish female and Kerry take turns performing fellatio on the Spanish male. The Spanish male ejaculates onto both Kerry and the Spanish female’s face. The two females then kiss each other on the mouth.
The next scene shows Kerry, Yvonne and Bonnie eating dinner. Bonnie puts a dog collar on Kerry while Yvonne is rubbing Kerry’s vagina area with a dildo. Bonnie masturbates Kerry with the dildo and after doing they tie Kerry to a chair. Bonnie and Yvonne leave the house. They meet a Negro male, named Carl in the park and bring Carl home with them. Carl disrobes and begins kissing the buttocks of Kerry. Yvonne performs the act of fellatio on Carl. Carl and Bonnie get in the ‘69’ position with Carl performing cunnilingus on Bonnie and Bonnie performing fellatio on Carl. Carl then has intercourse from the rear with Kerry. Carl then has intercourse with Bonnie in the missionary position. Carl withdraws his penis and masturbates himself to ejaculation on Bonnie’s stomach. The scene changes to show Carl and Bonnie dancing in the bedroom. Carl begins drinking and appears drunk. Bonnie performs the act of fellatio on Carl. Carl then has intercourse with Yvonne. Carl withdraws his penis from Yvonne’s vagina and masturbates himself to ejaculation on Yvonne’s stomach.
The scene changes and shows Carl and Kerry on the floor of the dining room acting like dogs. Each has a dog collar and were drinking water from a bowl on the floor. The door bell rings and Yvonne answers it to find the Spanish male from the previous scene standing there. The Spanish male joins Kerry and Carl on the' floor of the dining room and disrobes. Yvonne performs fellatio on the Spanish male. The movie then ended with the words “The End” printed on the screen.
Throughout this entire motion picture oral, genital contact penetration of the penis into the vagina, penetration of the tongue into the vagina, masturbation, ejaculation, exhibition of the genitals and pubic hair as well as the breasts and nipples are clearly visible.
For the above facts and reasons that a search warrant should be issued for the Sinerama Theatre located at 3615 Tulane Avenue for the purpose of seizing the following described property: The currently featured film, entitled “The Freak Sisters”; mechanisms used for the display of the motion picture, records reflecting ownership and employees of the business as well as records reflecting receipt of the motion picture.

. 366 So.2d 557 (La. 1979).

. See first appendix to this opinion for full content of the affidavit.

. See second appendix to this opinion for full content of the affidavit.