WARD, Judge.
Timothy Smith was charged-with a violation of the obscenity law, R.S. 14:106 A(3) [1], for exhibiting a film entitled “Lust at the Top.” After viewing the film, a 6 member jury unanimously convicted him as charged. He received a sentence of one year inactive probation, a $2,500 fine and was ordered to pay $100 in court costs or serve 30 days in lieu of payment of court costs.
Smith appeals, relying on six assignments of error for reversal of his conviction and sentence.
In the course of a pornography investigation, Officer Warren Riley went to the Cine’ Royal Theater on Canal Street to view the movie “Lust at the Top.” Riley paid Timothy Smith, a theater employee, for a ticket, entered and watched the movie. The film explicitly depicted men and women engaged in various sexual acts, in-eluding intercourse, fellatio and cunnilingus. Subsequently, Riley prepared and obtained warrants for Smith’s arrest and confiscation of the film. Later that same day, two vice officers arrested Smith at the theater and seized the film which they found hidden in an inoperable ice machine.
Smith contends the Trial Court committed three errors during trial. First, Smith argues the Trial Court erred by refusing to charge the jury with his requested instructions. After charging the jury with its own instructions, the Court asked the defense and State whether either had any requested instructions. Both responded negatively. Moreover, neither the minutes nor the record of proceedings reflect any requests for instructions prior to or during trial nor is there any indication the defense objected at the close of the Court’s instructions. Smith’s failure to make a contemporaneous objection precludes his assertion of this error on appeal. State ex rel. Ross v. Blackburn, 403 So.2d 719 (La.1981); C.Cr.P. art. 801 and 841.
Smith also argues the Trial Court erred by denying Smith the opportunity to cross-examine Detective Riley about other films shown in the community. Relying on State v. Wrestle, Inc., 360 So.2d 831 (La.1978), reversed in part on other grounds sub nom, Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). Smith contends this error encouraged the jury to judge the film based upon their personal values rather than upon an external or contemporary community standard.
The Court correctly maintained the State’s relevancy objection. In State v. Short, 368 So.2d 1078 (La.1979) the Supreme Court ruled that even if other materials sold or distributed by another store *558 may be as bad or worse than that sold by the defendant, this does not render the defendant’s material less obscene. Only a showing that the community accepts or tolerates the material — not merely a showing that such material is sold, or that it has not thus far been prosecuted — would be material evidence of contemporary community standards of obscenity. Hamling v. U.S., 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), rehearing denied 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129.
Smith next argues the Trial Court erred by excluding some of the testimony of a defense expert, Dr. Edward Morse, a sociologist, who testified about contemporary community standards. When the defense sought testimony describing films shown on cable television Playboy channel to show the basis of Dr. Morse’s opinion, the Trial Court excluded that part of the proferred testimony. Dr. Morse was allowed, however, to testify about his studies of the New Orleans community and to give his opinion that films similar to “Lust at the Top” were acceptable to contemporary community standards. Since the Court allowed Dr. Morse to give his expert opinion and the basis of that opinion, except that part relating to other films, the exclusion of his testimony about “other films” was at best harmless error.
Moreover, the jury instructions prohibited jurors from basing their verdict on personal values. Instructing the jury on contemporary community standards, the Judge said:
When we refer to ‘contemporary community standards’ we mean, that in determining whether the materials introduced at this trial or (sic) obscene or not, you are to consider what our local, general community standards are at large, at this time, are in this regard. Each juror is only entitled to draw on her personal knowledge of the view of the average person in the community, from which you come for making this required determination.
While a juror may not base his or her verdict on their personal values, a juror is entitled to draw on his own personal knowledge of the views of the average person in the community in determining a violation of community standard. Hamling, supra. The instructions were clear, concise, and adequately informed the jury of the standards to be applied. The assignments of trial error are without merit.
Concluding the discussion of Smith’s first assignment, the exclusion of the “other films” evidence did not encourage the jury to employ their personal values rather than a community standard in its obscenity determination.
Smith also contends the Trial Court erred in pretrial rulings. First, Smith contends the Trial Court erred by denying his motion to suppress the film. Citing State v. Neal, 279 So.2d 172 (La.1973), he argues the affidavit in support of the warrant provided the magistrate with insufficient evidence of probable cause to conclude Smith was displaying obscene material because the affidavit failed to recite the “plot” of the movie, and, as a consequence, the magistrate could not determine that the film “lacked serious literary, artistic, political or scientific value” as required by R.S. 14:106 A(3).
Smith’s reliance on the Neal case is misplaced. Unlike the warrant in this case, Neal dealt with a “blanket” or general search warrant for any obscene material which the Court found constitutionally deficient because the determination of obscenity rested within the sole discretion of the seizing officer. The search warrant in the present case listed only the described film as the property to be seized. Neal does not support Smith’s argument that the Magistrate must have an opportunity to evaluate the film as a whole and determine the film does not have any redeeming social value before issuing a warrant.
In applying for a search warrant, the police must supply factual information, not conclusionary allegations, sufficient to convince the magistrate that the material to be seized is probably obscene. State v. B.G.N.O., Inc., 371 So.2d 776 (La.1978).
The affidavit in support of the warrant application fully described sexual acts de *559 picted in the film, all of which constitute “hard core sexual conduct”, as defined in R.S. 14:106 A(2)(b)[2] and further stated that the acts occurred throughout the film. It need not give the plot of the film nor the applicant’s opinion of whether the film had redeeming social value. State v. B.G.N.O., Inc., supra.
We conclude the affidavit supplied sufficient information to convince the magistrate that the material was probably obscene. The Trial Judge did not err in denying Smith’s motion to suppress.
Smith argues that the Trial Court erred in pretrial rulings when it refused to order the State to comply with discovery requests. The defense requested information concerning the identity of the person or persons who viewed the film and found it obscene, offensive or appealing to the prurient interest, and the name of the individual determining the community standard on obscenity. In State v. Wrestle, Inc., supra, the defense sought similar information from the State concerning the community standard of “prurient appeal” and “patent offensiveness”. The Louisiana Supreme Court upheld the Trial Court’s refusal to order the State to produce the information, holding that the information related to issues of fact to be determined by the jury. Hence, the Trial Court ruling was correct.
Smith subpoened a listing of all persons arrested and/or charged with a violation of R.S. 14:106 within the previous 12 month period, as well as a listing of all arrests and all cases charged of whatever nature for the same period. As the Trial Court observed, the State has discretion in determining whom to prosecute. The requested information hore no relevancy to Smith’s case, and the State is not compelled by the discovery articles, C.Cr.P. arts. 716 et seq., to produce records containing that information. Moreover, the information requested constitutes public records available for inspection by Smith to the extent required by the Public Records Act — R.S. 44:9. Smith’s third assignment is merit-less.
Smith contends the Trial Court erred in another pretrial ruling when it refused to quash the bill of information which Smith contends is vague, ambiguous and fails to specifically allege financial gain from his action or that the film arouses prurient interest. It is generally sufficient that an indictment state the offense charged in the words of the statute itself provided those words fully set forth the elements necessary to constitute the offense. Hamling v. U.S., supra. The bill of information in this case states that Smith “did commit the crime of obscenity by selling, distributing, advertising or displaying obscene material, to wit: a Movie Entitled ‘Lust at the Top’ contrary to LSA-R.S. 14:106(A)(3).” The verbiage of the bill tracks the language of the statute proscribing Smith’s action, i.e. displaying the film, and directs the reader to the statute which defines “obscene material” as including work which appeals to the prurient interest. Words definfed by law are to be construed according to their legal meaning. C.Cr.P. art. 477. An allegation that the *560 film is “obscene” sufficiently states the elements necessary to prove “obscenity” under the statute. As for the allegation of financial gain, the portion of the statute which Smith is charged with violating is silent as to financial gain. The Trial Court did not err in denying Smith’s motion to quash and this assignment is meritless.
Smith’s final assignment of error relates neither to trial nor pretrial motions but is an allegation that Smith was denied a fair and impartial trial because the State “summarily” challenged all male jurors from his jury. Citing no authority for this position, Smith apparently relies on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) which prohibits racially based exclusion of potential jurors. Smith attempts to extend the Batson holding to alleged gender discrimination.
Assuming that the Batson holding extends to gender biased exclusion, the facts of Smith’s case do not show discriminatory jury selection under Batson. To establish a prima facie case of purposeful discrimination, Smith must initially show he is a member of a cognizable group and that the prosecutor has exercised peremptory challenges to remove members of this group from the jury; and secondly, show other relevant facts and circumstances which infer the prosecution used its peremptory challenges to exclude potential jurors based upon gender. The jury pool list indicates a random selection of potential jurors, male and female. Of the first eleven persons on the list from which Smith’s jury was ultimately chosen, three were men and eight were women. The State used only three of its six peremptory challenges while Smith used two, leaving six unchallenged women who were ultimately selected as jurors. The State’s action is hardly sufficient to show concerted discrimination against men. This assignment is meritless.
For the foregoing reasons, Smith’s conviction and sentence are affirmed.
AFFIRMED.

. R.S. 14:106 A(3) reads:
§ 106. Obscenity
A. The crime of obscenity is the intentional: (3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition, or display of obscene material, or the preparation, manufacture, publication, or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition, or display.
Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above, and (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value.

. R.S. 14:106 A(2)(b) reads:
(b) Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
(i) Ultimate sexual acts, normal or perverted, actual, simulated, or animated, whether between human beings, animals, or an animal and a human being; or
(ii) Masturbation, excretory functions or lewd exhibition, actual, simulated, or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or
(iii) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume that reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
(iv) Actual, simulated, or animated touching, carressing or fondling of, or other similar physical contact with a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same of opposite sex, in an act of apparent sexual stimulation or gratification; or
(v) Actual, simulated, or animated stimulation of a human genital organ by an device whether or not the device is designed, manufactured, or marketed for such purpose.